## 12278

### BROGDON v. NORTHWESTERN RAILROAD CO. OF S. C.

#### (139 S. E., 459)

1. RAILROADS—NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE HELD FOR JURY, WHERE TRAIN COLLIDED WITH AUTOMOBILE.—In action for death of passenger in automobile in collision between train and

automobile at railroad crossing near city limits, evidence as to
negligence of defendant and contributory negligence on part of
automobile driver *held* sufficient for jury.

2. NEW TRIAL—ON CONSIDERING DEFENDANT'S MOTIONS FOR DIRECTED
VERDICT AND NEW TRIAL, TESTIMONY FAVORABLE TO PLAINTIFF MUST
BE CONSIDERED THOUGH CONTRADICTED.—On considering defendant's
motion for directed verdict and for new trial, Circuit Judge is re-
quired to consider testimony favorable to plaintiff, even if all plain-
tiff's testimony was contradicted by that of defendant.

3. RAILROADS—RAILROAD'S FAILURE TO GIVE STATUTORY CROSSING SIG-
NALS REQUIRES SUBMISSION OF CASE TO JURY ON ISSUE OF ACTUAL
AND PUNITIVE DAMAGES.—Evidence of railroad's failure to give
statutory crossing signals requires submission of action for death
of passenger in automobile colliding with train, to jury not only
on issue of actual damages but on issue of punitive damages.

4. APPEAL AND ERROR—DEFENDANT IN ACTION FOR DEATH IN RAILROAD
COLLISION CANNOT COMPLAIN OF JURY'S FAILURE TO AWARD PUNI-
TIVE DAMAGES.—In action against railroad for death in collision be-
tween train and automobile at crossing, refusal of jury to award
punitive damages operated to defendants' benefit and cannot be
complained of by defendants, in view of evidence justifying award
of such damages.

5. APPEAL AND ERROR—INSTRUCTION THAT RAILROAD AND USER OF
HIGHWAYS MUST USE THEM WITH DUE REGARD FOR SAFETY OF
OTHERS HELD NOT GROUND FOR COMPLAINT BY DEFENDANT NOT RE-
QUESTING FULLER INSTRUCTION.—In action against railroad for death
in collision between train and automobile at highway crossing, in-
struction relative to duty of railroad and user of highway to use
highway with due regard for safety of others *held* not erroneous,
since defendant if wishing charge to be made fuller had duty of
making request therefor.

6. NEGLIGENCE—INSTRUCTION RELATIVE TO NEGLIGENCE OF DRIVER OF
AUTOMOBILE NOT BEING IMPUTABLE TO OCCUPANT KILLED IN COL-
LISION WITH TRAIN HELD NOT ERRONEOUS.—In action against rail-
road for death in collision between train and automobile at cross-
ing, instruction that automobile driver's negligence was not im-
putable to occupant unless driver had custody of person and was
not guilty of gross or willful negligence or acted in violation of
law contributing to injury *held* not erroneous.

7. RAILROADS—INSTRUCTION ON SUDDEN PERIL OF AUTOMOBILE PASSEN-
GER KILLED IN COLLISION WITH TRAIN HELD NOT ERRONEOUS UNDER
EVIDENCE.—In action against railroad for death of automobile pas-
senger in collision with train at crossing, charge to effect that
person in imminent danger need exercise only such care as person

of ordinary reason and prudence *held* not erroneous because driver of automobile was not examined as a witness, since evidence authorized presumption that driver was confronted with situation of imminent peril.

8. Trial—Generally Party May Present Witnesses Which He Desires.—Generally a party may present to Court such witnesses as he desires to offer.

9. New Trial—Trial Court's Refusal to Grant New Trial for Plaintiff's Failure to Produce Witness Held Not Abuse of Discretion.—Refusal of lower Court to grant new trial because of plaintiff's failure to produce witness which defendant expected him to produce *held* not an abuse of discretion, since defendant if desiring such witness could have required his attendance.

10. Evidence—Testimony of Automobile Driver at Coroner's Inquest Held Inadmissible in Action for Death of Passenger in Collision With Train.—In action against railroad for death of automobile passenger in collision with train, testimony of driver of automobile given at Coroner's inquisition *held* properly excluded where driver was not witness at trial.

11. Death—$3,500 for Death of Negro Woman Held Not Excessive.—$3,500 for death of Negro woman in collision between train and automobile in which she was riding *held* not excessive.

Before Dennis, J., Sumter, March, 1926. Affirmed.

Action by M. B. Brogdon, administrator of the estate of Jemima Walker, deceased, against the Northwestern Railroad Company of South Carolina. Judgment for plaintiff, and defendant appeals.

The fourth exception which has been directed to be reported is as follows:

"4. That his Honor erred in charging the jury as follows: 'Railroads operating across a highway have certain duties to perform. In other words, we must act with due regard for the safety of ourselves and other people. In other words, a man operating an automobile on the road has not the sole right to that road; neither has the man operating a train. While a train has to be operated on a track and cannot dodge, still it must be operated with due regard for the safety of the traveling public. People who use the highway have as much right to use the highway as the railroad has to cross

it, and the train has as much right to cross it as the people. Recognizing these different rights, the law says each must operate with due care for the safety of other people as well as for themselves'—the error being that said charge conveyed to the jury the understanding that the respective rights of the parties upon a railroad crossing were the same and that the plaintiff had as much right upon said crossing at the moment of the collision as the defendant had; whereas, the rule is that by reason of its character and momentum and the requirements of the public travel upon railroad trains, that the railroad has the right of way at such crossings, and that under the facts in this case the charge to the jury of equal rights upon a grade crossing on the part of the traveling public and the railroad at the same time, was harmful error."

*Messrs. Purdy & Bland* and *T. H. Tatum,* for appellants, cite: *Imputability of negligence of driver to passenger regulated by statute:* Vol. 3, Code, P., 1491, Sec. 28. *Failure to produce best evidence is presumption that same would be hurtful:* 121 S. C., 94; 133 S. E., 463.

*Messrs. Epps & Levy,* for respondent, cite: *Failure of railroad to give statutory signals at crossing warrants sufficient inference of negligence to carry issue to jury:* 106 S. C., 123. *Conflicting evidence goes to jury:* 129 S. C., 427. *Duties of highway traveler:* 121 S. C., 394; 63 S. C., 271. *Where statutory signals not given, burden on railroad to show that injured person knew of approach in time to have avoided collision; for jury:* 84 S. C., 125; 138 S. C., 385. *Statute covering injuries at crossing modifies common law rule:* 84 S. C., 125; 95 S. C., 187; 29 Cyc., 542. *Doctrine of sudden peril:* 82 S. C., 71; 131 S. C., 490. *Contributory negligence an affirmative defense:* 101 S. C., 395; 93 S. C., 329; 106 S. C., 123. *"General verdict":* Sec. 541, Code Civ. Proc., 1922. *Admissions of agent concerning agency not part of res gestae do not bind principal:* 84 S. C., 190;

126 S. C., 1. *Not admissible evidence:* 5 S. C., 358. *Admissions of third party; when admissible:* 27 S. C., 63; 62 S. C., 127; 61 S. C., 292; 117 S. C., 44; 53 S. C., 448. *Court cannot direct either party to place certain witnesses on stand:* 91 S. C., 337. *Court has no jurisdiction to pass on question of excessive verdict:* 29 S. C., 303; 47 S. C., 375; 58 S. C., 70.

September 26, 1927.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

This was an action for actual and punitive damages, tried in the Court of Common Pleas for Sumter County before Hon. E. C. Dennis, presiding Judge, and a jury.

The plaintiff's complaint, in addition to formal matters, alleged the killing of one Jemima Walker, a colored woman, in a collision of a train of the defendant and a Ford automobile, at what is known as the "Liberty street road" crossing in Sumter County, just without the limits of the City of Sumter. Negligence on the part of the defendant was alleged in failure to give the statutory signals for a public crossing, failure to have a headlight on the engine, although it was about dark at the time of the accident, running of the train at great speed, failure to have the proper sign at the crossing, and failure to have a watchman at the crossing. It was alleged that the occupants of the automobile, Jemima Walker, the deceased, her daughter, Clara Brogdon, two small children of Clara's and Alfred Wilson, the driver of the car, were strangers in Sumter, and were not acquainted with the road and railroad crossing; that the crossing at Liberty street was particularly dangerous, and the dangers were known to the defendant.

The defendant denied all acts of negligence and willfulness charged against it, and alleged contributory negligence and willfulness on the part of Wilson, the driver of the automobile, in that he approached the crossing in a careless

and reckless manner, and that he did not look and listen properly.

The verdict was in favor of the plaintiff for $3,500 actual damages.

The defendant has appealed to this Court, the exceptions covering several matters hereinafter mentioned.

Exceptions 1, 2, 3, and 7 may be disposed of together. Exceptions 1 and 3 allege error on the part of the trial Judge in refusing the motion of the defendant to direct a verdict in its favor on the whole case. Exception No. 2 complains of error because of refusal to direct a verdict in favor of the defendant upon the issue of willfulness. Exception No. 7 alleges that there was error in refusal to grant a new trial on the evidence in the case.

The gist of all these exceptions is this: That even if the defendant was negligent and willful in failing to give the statutory signals for the crossing, the evidence showed that the driver of the automobile was grossly negligent and willful, and that his conduct was the proximate cause of the injuries resulting in the death of the deceased. It is urged that the evidence failed to show that Wilson, the driver of the car, was a stranger in the vicinity and was unacquainted with the roads and crossing; that it appeared that the automobile struck the train at least 48 feet from the front of the train; that the persons in the automobile saw the train when the automobile was in 33 feet of the train; that a Ford car going at the rate of 18 miles an hour could have been stopped within 15 feet; that there was no explanation on the part of the driver of the automobile, who was not produced as a witness; and that the elimination of punitive damages by the jury left nothing to support a verdict for actual damages.

In our opinion, all the exceptions mentioned are based upon the defendant's view of the evidence in the case. It did adduce evidence from witnesses, who testified for it, and by a diagram shown to the jury, that the crossing was

no more dangerous than other railroad crossings; that at a point 35 feet from the crossing a driver of an automobile who looked could see down the track for nearly 500 yards; that the signboard could be seen distinctly and was well located; that the sun was still shining at the time of the accident; that the automobile was being run at great speed, and that the driver thereof, entirely reckless as to his own life and the lives of those in the car with him, rushed headlong into the moving train, although the bell was ringing and the whistle was blowing, and that the automobile struck the train some 48 feet to the rear of the pilot. If all the evidence in the case agreed with the defendant's view of the evidence, there, of course, should have been a directed verdict for the defendant.

The first obstacle in the way of sustaining defendant's contention is the fact that the jury viewed the place where the accident occurred. The jury saw the condition of the railroad track, the signboard, the storehouse and other buildings located near the track, all of which plaintiff's witnesses testified about.

The viewpoint of the defendant overlooks testimony favorable to the plaintiff's side, which the Circuit Judge was in duty bound to consider on the motions for directed verdict, and on the motion for a new trial, even if all the plaintiff's testimony was contradicted by testimony of the defendant. The plaintiff's witnesses testified that the crossing was dangerous, that the signboard was very dim, and that there was an absolute failure of the defendant to give the statutory signals. It is true that there was no direct evidence that the driver of the automobile was unfamiliar with the surroundings, as was alleged in the plaintiff's complaint. Perhaps no one could have testified to this positively except the driver, who was not called as a witness. The only occupant of the car who did testify said that she was unfamiliar with the crossing and the surrounding conditions, and that the driver lived in Richland County. It

might be held that there was a scintilla of evidence to carry the case to the jury on account of the driver's unfamiliarity with the crossing. We do not think, however, even if there was no evidence whatever as to the driver's unfamiliarity that such fact alone would be sufficient to disturb the holdings of the trial Judge. The familiarity or unfamiliarity of the driver with the crossing was a question for the jury to consider on the issue of contributory negligence of the driver in the circumstances.

We do not think it necessary to cite a long list of authorities to show that the presiding Judge was right in all his rulings questioned by the exceptions under consideration. We need to refer to but two recent authorities: *Jennings v. Northwestern Railroad Co.,* 138 S. C., 385; 136 S. E., 639, and *McBride v. A. C. L. Railroad Co.,* 140 S. C., 260; 138 S. E., 803.

In the *Jennings case,* where the accident occurred at the same crossing referred to in this case, the evidence on the part of the defendant was almost the same as the evidence offered by the same defendant in the case at bar. This Court sustained the refusal of the trial Judge in the *Jennings case* to direct a verdict for the defendant.

In the *McBride case,* Mr. Justice Stabler cleared up some of the confusion formerly existing in our law as to accidents occurring at railroad crossings. In that case, it was held that when a person is injured at a crossing and the railroad failed to give the signals required by law, that the presumption arises that the failure to give such signals was the proximate cause of the injury. Whether or not the defendant in this case gave the signals was a question of fact for the jury to determine. Evidence of the failure to give such signals not only required the Circuit Judge to send the case to the jury on the issue of actual damages, but also upon the issue of punitive damages.

While the Circuit Judge was right in submitting to the jury the question of punitive damages, and while there was some evidence which would have justified a verdict in favor of the plaintiff on that issue, the refusal of the jury to favor the plaintiff with a verdict for punitive damages was to the defendant's benefit, and we do not see how, or why, the defendant can complain thereabout. It was clearly within the province of the jury to say that the plaintiff should be awarded punitive damages against the defendant, or if the plaintiff should be granted actual damages alone.

In his charge to the jury, the trial Judge used this language:

"Now, negligence is said to be the want of due care. That is to say, a person operating a railroad has certain duties to perform, set out by the statutes, and other duties to perform for the safety of the public and its own passengers. (Railroads operating across a highway have certain duties to perform. In other words, we must act with due regard for the safety of ourselves and other people. In other words, a man operating an automobile on the road, has not the sole right to that road; neither has the man operating a train. While a train has to be operated on a track and cannot dodge, still, it must be operated with due regard for the safety of the traveling public. People who use the highway have as much right to use the highway as the railroad has to cross it, and the train has as much right to cross it as the people. Recognizing these different rights, the law says each must operate with due care for the safety of other people as well as for themselves.)

The appellant complains by its fourth exception of that portion of the instructions, which we have indicated by parentheses. It is contended that the charge inclosed in parentheses conveyed to the jury the understanding that the respective rights of the parties upon the railroad crossing were the same, and that the plaintiff's intestate had as much

right upon the crossing at the moment of the collision as the defendant, when the proper rule is that by reason of its character and momentum and the requirements of the public travel upon railroad trains, the railroad has the right of way at such crossings, and, under the facts in this case, the charge of the presiding Judge was harmful error.

As far as it went, the instruction of the presiding Judge was good law and in harmony with the recent decisions of this Court. See *Chisolm v. S. A. L. Ry. Co.,* 121 S. C., 394; 114 S. E., 500, and *Batson v. G. & K. Ry. Co.,* 95 S. C., 206; 78 S. E., 885. If the defendant thought the charge should have been fuller, it was its duty to make request therefor. The statement of the Judge that "a train has to be operated on a track and cannot dodge," in our opinion, was very favorable to the defendant. We find no prejudicial error in the instruction complained of.

The fifth exception seeks reversal because of the following instruction to the jury:

"The jury is charged that the negligence of the driver of an automobile is not imputable to an occupant of the car, unless the relation of master and servant exists between the passenger and the driver, or unless they are engaged in a common enterprise, or unless the driver has the custody of a person such as an infirm person or an infant. This is the common-law rule enforced in this State. This rule, however, is modified by the statute which I will read to you to the extent that if the jury should find that the person having charge of his person or property was at the time of the collision guilty of gross or willful negligence or was acting in violation of the law and that such gross or willful negligence or unlawful act contribute to the injury."

It is argued that this charge tended to confuse and mislead the jury; that the matter referred to by the Judge is regulated by statute and that it is not "modified" as stated by the Judge; and that there was no dispute that both the automobile and the person of the deceased were in charge

of Wilson, the driver of the car, at the time of the injury.

We think the position of the appellant is untenable. The common-law rule as to the giving of signals by railroad trains at crossings has been modified by statute in this State. The charge complained of is in accord with the Jennings and McBride cases heretofore cited, and also the cases of *Neely v. C. & N. W. Ry. Co.*, 123 S. C., 449; 117 S. E., 55; *Langley v. Southern Ry. Co.*, 113 S. C., 45; 101 S. E., 286; *Dozier v. Charleston Consolidated Ry.*, 133 S. C., 335; 131 S. E., 592.

The sixth exception is this:

7   "His Honor erred in charging the jury as follows:

'Where a person is brought face to face with imminent danger on account of the negligence of another and without fault on his part, such person is not required in such emergency to exercise the same degree of care as if he had time for deliberation, and the full exercise of his judgment and reasoning faculties, but he is only required to exercise such judgment as a person of ordinary reason and prudence would exercise under similar extraordinary circumstances.' That is the law, is good law. Where a person is brought face to face with imminent danger by the negligence of another, and without fault on his part in being brought into that sudden peril, the law knows that a person could not act under such circumstances as a person would under ordinary circumstances. That is to say, the law says he should act as a person of ordinary reason and prudence would act under the same circumstances."

The contention of the appellant is that the driver was not examined as a witness; that there was no evidence that he was confronted with sudden peril, without fault on his part, brought about by the negligence of the defendant, or that he made any effort to avoid the injury, or that in doing so he was seeking to avoid a peril brought about by the sudden danger surrounding him due to the negligence of the defendant, and that therefore the charge was confusing and

misleading.   While it is true that the driver did not testify and from his lips there was no statement that he was put "in sudden peril," we think the evidence to which we have already referred made it proper for the presiding Judge to give the instruction, which is imputed to have been erroneous. As stated before, the jury saw the crossing and all the conditions around it.   It had evidence that the signals were not given.   It had the right to presume that the driver of the automobile did not intend to commit suicide.   It had a right, with the evidence before it, to come to the conclusion that when the driver of the automobile discovered the great danger of colliding with the train, that the failure to give the signals had brought the driver into a situation of sudden peril.   The driver's situation could have been gathered from the circumstances and conditions as well as from direct testimony given by him.   If it were required that there be testimony from the driver of a vehicle that he was placed in a position of sudden peril before a charge as to the law of sudden peril could be given, such charge could never be given, whatever the other proof might show, in cases where the driver was killed or so injured that he could not thereafter enjoy the power of speech.

The defendant sought a new trial on several grounds. Refusal of the Judge to grant its motion therefor is alleged to have been erroneous.   One of the grounds for this motion was because the plaintiff did not offer the driver of the car, Wilson, as a witness; that the plaintiff had the power to produce him; and that it was the duty of the plaintiff to produce the best evidence on the subject, and that the failure to produce this witness, whose testimony would have been against the interest of the plaintiff, entitled the defendant to a new trial.   There was no explanation as to why Wilson was not present.   It does not appear that he was summoned by either side to attend the Court.   He was a witness at the coroner's inquest.

The general rule is that a party may present to the Court such witnesses as he desires to offer. We know of no law or decision which would justify us in holding that a case should be reversed because one of the litigants has failed to produce a witness which his adversary expected him to produce. If the defendant desired Wilson as a witness, it could have required his attendance. In any event, this matter was entirely in the discretion of the Circuit Judge, and this Court is not prepared to say that there was an abuse of that discretion.

Another ground for the new trial motion was that since the verdict of the jury eliminated punitive damages, there was nothing to support a verdict for actual damages, as there was no explanation on the part of the driver, and the only occupant of the car who testified for the plaintiff swore that she saw the train when she was within 33 feet of it, and the evidence showed that a Ford automobile, under the circumstances, could have been stopped within 15 feet of it. As stated previously, we think there was sufficient testimony to go before the jury. After the verdict in favor of the plaintiff, the trial Judge could have granted a new trial, if he had thought the verdict improper. His failure to interfere in that respect was within his discretion, and this Court cannot upon the showing made reverse his holding.

At the trial the defendant attempted to offer in evidence the testimony of Albert Wilson, the driver of the automobile, given at the coroner's inquisition over the dead body of Jemima Walker. The trial Judge held this testimony incompetent, and in this holding he was absolutely correct. If Wilson had been offered as a witness by the plaintiff, he could have been cross-examined as to his testimony before the coroner, and he had contradicted the statements there made by him, the defendant could have then offered his former testimony. We know of no rule, however, which would have permitted the defendant to introduce this statement as original testimony on its part.

Complaint is made that the verdict was excessive, and that Judge Dennis abused his discretion in not so holding, and in not granting a new trial or reducing the verdict. We find no merit in this exception. While the deceased was a negro woman, we are not prepared to say that a verdict for $3,500 was excessive, if the plaintiff was entitled to any sum at all. This Court can do little as to the amounts of verdicts in cases of this nature. The amount to be found was for the jury in the first instance. If the presiding Judge thought the amount excessive, he had the right to make correction on the motion for a new trial.

The judgment of this Court is that all the exceptions be dismissed, and the judgment of the lower Court be and the same is hereby affirmed.

Mr. Chief Justice Watts and Mr. Justice Stabler concur.

Mr. Justice Cothran dissents.

Mr. Acting Associate Justice Purdy disqualified.

Mr. Justice Cothran (dissenting): I think that the fourth exception (which will be reported) should be sustained. *Chisolm v. R. Co.*, 121 S. C., 394; 114 S. E., 500; 3 Elliott, R. R. (3d Ed.), § 1646; *Continental Co. v. Stead*, 95 U. S., 161; 24 L. Ed., 403, and cases citing it in Rose's Notes.