12373

SANDERS v. CHARLESTON & WESTERN CAROLINA
RAILWAY COMPANY

(141 S. E., 607)

1. TRIAL—ON MOTION FOR DIRECTED VERDICT, EVIDENCE MUST BE CONSIDERED MOST FAVORABLY TO OPPONENT OF MOTION.—The principle is well established that, on motion for a directed verdict, the evidence must be considered most favorably to opponent of motion.

2. CARRIERS—IN ACTION FOR DAMAGES FOR NEGLIGENT DELAY IN TRANSPORTING PERISHABLE VEGETABLES, PLAINTIFF MUST SHOW NEGLIGENCE ARISING FROM UNREASONABLE DELAY AND THAT IT WAS PROXIMATE CAUSE OF DAMAGE.—In action for damages for negligent delay in railroad's transportation of perishable vegetables, plaintiff is required to show negligence arising out of unreasonable delay, and also that such negligence was the proximate cause of the damage.

3. NEGLIGENCE—NEGLIGENCE MAY BE INFERRED FROM CIRCUMSTANCES.—Negligence may be inferred from circumstances.

4. CARRIERS—INITIAL CARRIER OF INTERSTATE SHIPMENT IS LIABLE FOR LOSS OR DAMAGE CAUSED BY NEGLIGENCE OF CONNECTING CARRIERS (CARMACK AMENDMENT [49 USCA § 20]).—Under the Carmack Amendment (49 USCA § 20 [U. S. Comp. St., §§ 8604a, 8604aa]), the initial carrier of an interstate shipment is liable for loss or damage caused by negligence of connecting carriers.

5. CARRIERS—DIRECTING VERDICT FOR DEFENDANT CARRIER IN SHIPPER'S SUIT FOR DETERIORATION OF PERISHABLE VEGETABLES BY DELAY HELD ERROR.—Directing verdict for defendant railroad in shipper's

NOTE: As to liability of initial carrier for loss or damage for interstate shipment, see 31 L. R. A. (N. S.), 20; 4 R. C. L., 907; 1 R. C. L. Supp., 1233; 4 R. C. L. Supp., 297; 5 R. C. L. Supp., 261.

On liability of carrier for unreasonable delay in delivery of perishable goods, see 4 R. C. L., 744; 1 R. C. L. Supp., 1206.

action against carrier for deterioration of perishable vegetables through delay *held* error; evidence relative to delay and as to condition of vegetables upon arrival making question of carrier's negligence one for jury.

Before THOS. TALBIRD, SPECIAL JUDGE, Beaufort, February, 1927. Reversed.

Action by Mrs. B. G. Sanders against the Charleston & Western Carolina Railway Company. Judgment for defendant, and plaintiff appeals.

*Messrs. Claude M. Aman,* and *Alfred Wallace, Jr.,* for appellant, cite: *On motion for nonsuit or directed verdict, the evidence must be taken most strongly against the moving party:* 104 S. C., 414; 121 S. C., 356; 125 S. C., 303; 132 S. E., 47. *Ordinarily proof of delay in transportation and delivery resulting in damages entitles plaintiff to recover:* 78 S. C., 8; 88 S. C., 172; 106 S. E., 684; 128 S. C., 121. *Whether or not delivery was made in a reasonable time is question for jury:* 105 S. C., 406. *The fact that this was an interstate shipment the stipulation quoted from the bill of lading does not affect the question or alter the rule:* 1 Roberts, Fed. Liability of Carriers and Shippers, 572; 10 C. J., 132, Sec. 165. *Negligence need not be proved:* 103 S. C., 467; 10 C. J., 360, Sec. 544. *Negligence; proof of delay; evidence of negligence:* 4 R. C. L., 696, 698. *Only act of God or public enemy or inherent vices of the goods can excuse carrier:* 103 S. C., 467; 90 S. C., 183; 1 Roberts, Fed. Liability of Carriers, 574. *No act of God here:* 2 Bail., 157; 23 Am. Dec., 131; 2 Speers, 197; 42 Am. Dec., 364; 189 Fed., 471; 50 Ga., 509; 166 U. S., 375; 4 R. C. L., 741, Sec. 210.

*Messrs. F. B. Grier, W. J. Thomas,* and *M. G. McDonald,* for respondent, cite: *While carrier is insurer of safe delivery it is not an insurer against delay:* 4 R. C. L., 741; 10 C. J., 283, 287; 105 S. C., 409; 41 S. C. L., 190; 75 S. C., 321; 24 L. R. A. (N. S.), 1209; 74 S. E., 512; 45 A. L. R., 916; 4 Elliott on Railroads (2d Ed., 177;

126 Fed., 75; 55 Am. Rep., 837; 170 N. W., 515; 173
N. Y. S., 96; 116 Atl., 243; Id., 411. *May recover for
delay only on proof of negligence:* 109 N. W., 307; 262
S. W., 1103; 206 S. W., 173; 172 N. Y. S., 129; 12 N. Y.,
245. *Delays occasioned by causes other than negligence are
reasonable delays:* 10 C. J., 287; 4 R. C. L., 741.

February 14, 1928.

The opinion of the Court was delivered by MR. ACTING
JUSTICE J. WM. THURMOND.

This action was commenced in Beaufort County for the
recovery of $2,202.50, alleged damages to 680 crates of to-
matoes, a perishable vegetable, delivered to the defendant at
Port Royal, S. C., on July 12, 1924, about 12:30 p. m.,
for transportation to Olivit Bros., Inc., New York City, to
be sold on consignment for account of plaintiff, said ship-
ment arrived at pier 29, New York City, at 9:30 p. m.,
July 16th, and was unloaded at 12:20 a. m., July 17th.
This car passed over several lines of connecting railways.
The material allegations of the plaintiff's complaint follow:

"That on the 12th day of July,. A. D. 1924, the plaintiff
delivered to the defendant company on its tracks at Port
Royal, S. C., 680 crates of tomatoes, the same being perish-
able commodity, for transportation to plaintiff's agent,
Olivit Bros., Incorporated, at New York City, in the
State of New York, to be sold on commission for the ac-
count of the plaintiff, and that the defendant issued its bill
of lading for the same.

"That at the time the said tomatoes were delivered to the
defendant company, they were in good condition and prop-
erly packed and of the very best quality, and, being a perish-
able commodity or property, they were accepted for shipment
at a higher rate and classification under the vegetable tariff
than is charged by the plaintiff for transporting goods of
a nonperishable nature. That, by reason of their perishable
nature and higher freight charges made by the defendant,

the plaintiff was entitled to prompt and expeditious handling and transportation to the point of destination, and prompt delivery of the said shipment to plaintiff's consignee.

"That on account of the usual schedule of the defendant company from Port Royal, S. C., to New York City, the said shipment should have been delivered to plaintiff's consignee on the 14th day of July, A. D. 1924, in time for the early morning market at which time the market price for tomatoes of the kind and quality which constituted this shipment of 680 crates of tomatoes was $3,400. The defendant, however, negligently, carelessly and in utter disregard of its duty to the plaintiff, failed and neglected to deliver the said shipment until the 17th day of July, A. D. 1924, at which time they were pricked, rotted, heated, nested, and in such a damaged condition, and in addition thereto, the market price had declined so that they sold for the sum of $1,297.50. That, if the said shipment of tomatoes had arrived and been delivered to the plaintiff's consignee in time for the early morning market of July 14th they would have sold for the sum of $3,400, whereas, as a matter of fact, in consequence of the careless, negligent acts of the defendant, as above set forth, the said shipment of tomatoes only brought the sum of $1,297.50, to the damage of this plaintiff in the sum of $2,202.50, together with interest thereon from the 14th day of July, A. D. 1924, at the rate of 7 per cent. per annum. Plaintiff alleges that she has paid the sum of $346.80 freight upon the above shipment."

The plaintiff introduced testimony tending to show that the tomatoes were delivered in good order and condition to the defendant, at Port Royal, S. C., but that they were in bad condition when delivered to the consignee; that they sold for a very much lower price on account of the deterioration; that it was caused by failure of the defendant to promptly carry and deliver the tomatoes and failure to transport and deliver them on schedule time of the defend-

ant, between Port Royal, S. C., and pier 29, New York City; that the market price had declined during the delay in the transportation and delivery; and that thereby the plaintiff was damaged in the sum of $2,202.50.

The answer of the defendant contains a general denial of the material allegations of the complaint, and alleges an affirmative defense, to wit:

"(a) That heretofore on or about the 12th day of July, 1924, defendant received from plaintiff a shipment of tomatoes in barrels at Port Royal, S. C., consigned to Olivit Bros., destination New York and thereupon issued its bill of lading therefor, which constitutes and is a written contract between the parties plaintiff and defendant and connecting lines en route to destination on this behalf.

"(b) That, in and by the provisions of the said bill of lading Section 2 (a), it is, among other things, provided: 'No carrier is bound to transport said property by any particular train or vessel, or in time for any particular market, or otherwise than with reasonable dispatch.' That defendant and its connecting lines over which the shipment moved to destination fully kept and performed in every particular the terms and conditions of the said written contract of shipment.

"(c) That this shipment in order to reach its destination by the shortest and most available route, had to move and did move over the line of this defendant to Yemassee, S. C., where it was delivered to the Atlantic Coast Line; thence over the rails of the Atlantic Coast Line to Richmond, Va., where it was delivered to the R. F. & P.; thence over the rails of the R. F. & P., to Potomac Yards, Va., where it was delivered to the Pennsylvania Railroad and thence over the rails of the Pennsylvania Railroad to destination. That on this movement defendant's line does not extend beyond Yemassee, S. C. That this defendant promptly and with great dispatch transported and delivered without loss, injury, or damage the said shipment to its connecting line at Yemas-

see. That the aforesaid connecting carriers promptly and with great dispatch transported to destination and delivered the said shipment without loss, injury, or damage.

"(d) That delivery at New York on the fourth morning after receipt of a shipment at Port Royal, S. C., is the quickest possible time that can be made under the fastest schedule now obtaining and at the times mentioned in the complaint hereon. That in the ordinary and reasonable course of transportation a much longer time is ordinarily required in the reasonably prompt and careful handling of a shipment from Port Royal, S. C., to New York City, the destination, to wit, five days, and sometimes as much as six days."

The defendant offered testimony tending to support the allegations of its answer, and especially to the effect that a hot box on the car containing said tomatoes delayed the transportation and delivery of the same, but only a few hours, and that the tomatoes were in good condition, except possibly 9 per cent., which were infected with a field disease; that the car was repaired and moved forward as quickly' as possible, and was inspected at different times en route; that the tomatoes were carried and delivered with all possible dispatch; that it was not possible to have shipped the car with a hot box, and still have made the market on fourth morning in New York; that it is impossible to provide against hot boxes; that everything possible was done by the defendant and its connecting carriers to promptly carry and deliver the tomatoes; and that this shipment was advanced with all possible speed, and the car was properly ventilated.

After all testimony was in, the defendant made a motion for a directed verdict in its behalf; this motion was granted by the Court. The plaintiff appealed to this Court from the directed verdict against her and judgment entered thereon. The principle is well established in this State that on motion for a directed verdict

the evidence must be considered most favorably to the opponent of the motion.  *Crews v. Sweet,* 125 S. C., 303; 118 S. E., 613; 29 A. L. R., 43.  *Wilson v. Railway Co.,* 134 S. C., 31; 131 S. E., 777.  *Anderson v. Hampton,* 134 S. C., 185; 132 S. E., 47.  *Brogdon v. Northwestern R. Co. of South Carolina,* 141 S. C., 239; 139 S. E., 459.

2, 3     In an action for damages for negligent delay in transportation of a perishable vegetable, the plaintiff is required to show negligence arising out of an unreasonable delay, and also that such negligence was the proximate cause of the damage.  *Van Epps et al. v. A. C. L. Ry. Co.,* 105 S. C., 406; 89 S. E., 1035.  But negligence may be inferred from circumstances.  It was held in *Hudson v. Railway,* 123 S. C., 488; 124 S. E., 584:

"Some act of negligence as alleged must be proven, but this negligence may be shown by a number of facts and circumstances, which taken together establish the act of negligence charged."

4     Under the Carmack Amendment (49 USCA, § 20 [U. S. Comp. St., §§ 8604a, 8604aa]), the initial carrier of an interstate shipment is liable for loss or damage caused by negligence of connecting carriers.  *Van Epps case, supra,* which is very similar to this case, and in that case it was also held:

"Where the evidence is susceptible of more than one inference, the question whether a carrier failed to transport goods with reasonable dispatch was for the jury, and the trial Court could not direct a verdict without invading the province of the jury."

In *Trakas v. Ry. Co.,* 87 S. C., 208; 69 S. E., 210, the legal principle is announced:

"When the goods are perishable, the carrier should exercise care in view of that fact, and, when perishable goods are delivered by the carrier in a damaged condition, the presumption makes it incumbent on the carrier to show that

its negligence did not contribute to bring about or hasten the deterioration."

The Court is satisfied that the learned Judge erred in directing a verdict for the defendant, and that under the facts and circumstances of this case, it should have been submitted to the jury; hence the judgment of the lower Court is reversed.

MESSRS. JUSTICES COTHRAN, BLEASE, STABLER and CARTER concur.