14524

CARTER *ET AL.* v. ATLANTIC COAST LINE R. CO.

(192 S. E., 624)

January, 1937.

*Messrs. Wilcox, Hardee & Wallace,* for appellant, cite:

*Messrs. McEachin & Townsend*, for respondents, cite:

August 4, 1937.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action, by J. H. Carter and W. Frank Sims, trading and doing business under the firm name and style of Carter & Sims Company, as plaintiffs, against the defendant, Atlantic Coast Line Railroad Company, was commenced in the civil Court of Florence County, this State, April 30, 1936, for the purpose of recovering alleged damages against the defendant, sustained by the plaintiffs on account of the negligence of the defendant in transporting from Petersburg, Virginia, to Boston, Massachussetts, a carload of green beans, diverted from Petersburg, Virginia, to Boston, Massachussetts, at 1:50 p. m. June 1, 1935. According to the allegations of the plaintiffs, the beans in question should have arrived in time for the market on June 3, 1935, but on account of the alleged delay of said shipment, caused by the defendant, the shipment did not reach the point of destination in time for sale on the market until June 4, 1935. According to the record in the cause, the defendant set forth in its answer that it admitted that the beans arrived only in time for the June 4, 1935, market, but denied that the said delay was the result of any negligence of the defendant, but on the contrary alleged that the shipment did not arrive sooner than June 4th on account of the delay of the plaintiffs in ordering the diversion.

The cause being at issue, the case was tried in said Court before his Honor, Judge R. W. Sharkey, and a jury, January 19, 1935, and resulted in a verdict for the plaintiffs in the sum of $285.93. In this connection I call attention to the fact that the parties agreed, in the trial of the case, that, in the event the plaintiffs were entitled to a verdict, the amount should be the said sum of $285.93. From entry of judgment on the verdict, the defendant, pursuant to due notice, has appealed to this Court, imputing error to his Honor under three exceptions, but in appellant's brief, prepared for this Court, appellant states only one question for the consideration of this Court, to wit: "Is the mere

fact that a perishable commodity moving in interstate commerce does not reach destination for a particular market, the possibility of reaching which is indicated in the schedule, evidence of negligence sufficient to support a verdict when the contract under which the commodity is shipped contains a stipulation that 'no carrier is bound to transport said property by any particular train * * * or in time for any particular market or otherwise than with reasonable dispatch?' "

Of course, if nothing appeared in addition to the ■ facts stated in this question, the question would have to be answered in accordance with appellant's contention, but, under my view, more than one reasonable inference may be drawn from the testimony introduced at the trial one of which is in accord with the respondents' contention and supports the verdict rendered by the jury. It is, in effect, conceded by the parties that, under the law, perishable goods must be transported with reasonable dispatch. In this connection attention is called to the following freight schedule introduced on the trial: "Note B—This schedule may, under ordinary conditions, and subject to operation of advance sections of perishable trains of P. R. R. and B. & O. R. R., from Potomac yard, be expected at destinations indicated, on carload perishable traffic when billed through to destination from point of origin, or diverted in time for dispatch on all sections of A. C. L. R. R. perishable train leaving Jacksonville or Waycross the day following date of shipment. The 4:15 A M. arrival at Boston via N. Y. N. H. & H., does not insure auction market delivery on B. & M. tracks morning of arrival. Auction market delivery on B. & M. tracks at Boston not guaranteed on the 4:00 A. M. or 4:45 A. M. arrival, but under favorable circumstances may be protected."

It is true, the shipment in question did not start from Jacksonville or Waycross or leave said places the day following date of shipment, but there is no just reason why the rule expressed above should not apply to the shipment in this

case. The shipment in the case at bar started from Tabor City, N. C., went by Petersburg, Virginia, and was diverted from Petersburg to Boston. Certainly the goods in this shipment were perishable and the same deserved all the consideration that any shipment would be entitled to send out from the above-named places, Jacksonville and Waycross, over the defendant's road. It is, in effect, conceded that the shipment in question was made up of perishable goods. There is nothing to show that the ordinary condition did not exist at the time the shipment in question was made. The latter part of May and the early part of June is known by shippers and carriers to be the regular time for transporting perishable goods in great quantities, such as contained in this shipment. As contended by the respondent, the number of cars at Petersburg was not unusual or unexpected but normal and, it appears, that the defendant had advertised itself as being able to handle the same under the existing circumstances. When the shipment was taken on at Tabor City, N. C., the defendant had full notice of the nature of the shipment and its duty to handle the same with reasonable dispatch. The defendant, also, had full knowledge of the nature of the shipment and its duty in handling the same at the time diversions instructions were given to it by Mr. Garrell at Tabor City, N. C., which instructions were issued at 1:50 p. m. on June 1, 1935, and there is testimony tending to show that said instructions were received by the defendant at Petersburg at 2:13 p. m. on said date, June 1, 1935, and transmitted by the defendant at 2:23 by telephone to what is known as Collier Yard at that point, at which place plaintiffs' car of beans had been standing since 1:55 a. m., May 31, 1935. In this connection I call attention to the fact that there was proof introduced that the plaintiffs had been shipping perishable goods and making diversions in this manner for a considerable length of time and the defendant had knowledge of this fact. Some of the testimony tended to show that shipments of this nature had been handled by the plaintiffs for ten or fifteen years, diversions

having been made often. It is the appellant's contention that there was delay in getting the shipment off because of the shipment having to be reiced and considerable time being required for this purpose. It is, also, the contention of the appellant that many shipments were coming in and that greatly interfered with transportation. It is the contention of the respondents that the shipments being handled by the defendant were no more than the defendant should have expected and no more than the defendant should have been able to handle speedily and with promptness. As to the re-icing of the car in question it is the contention of the respondents that that did not require any delay in transporting the car. Under all the facts and circumstances appearing in the case, it was a question of fact for the jury to say whether there was any unreasonable delay at the hands of the defendant in making said shipment after the notice of diversion was received. There was testimony tending to show that shipments made on diversion had been accustomed to be made in the time contended for by the respondents. Did the appellant perform its full duty in making the said shipment and transporting the said car to the point in question, that is, to Boston, Massachussetts? According to some of the testimony introduced in the case on behalf of the plaintiffs the said car should have arrived at Boston in time for the market on the morning of June 3rd and not June 4th, when it did arrive. There was some testimony from which such inference could reasonably be drawn, considering all the facts and circumstances under which the shipment was made. Whether the appellant should have, under the facts and circumstances surrounding the shipment gotten the shipment off earlier from Petersburg so as to have arrived in time for the market on the 3rd of June, was a question of fact for the jury. I may state, in this connection, that there was some testimony from which it may be inferred that shipments of the nature of the shipment involved had been transported within that time. It is the contention of the appellant that the shipment could not be made

earlier for the reason that the defendant would have had to have given the same priority and in violation of the federal law. Of course, the defendant could not be expected to get the shipment off for the plaintiffs in a manner that would be in violation of the federal law, but whether the defendant transported the shipment in question as soon as reasonable, under the circumstances and conditions surrounding the case, or whether it neglected to do this was a question of fact for the jury.

As I view this case, it is governed by the principles in the case of *Sanders v. Charleston & Western Carolina Railway Company,* 143 S. C., 395, 141 S. E., 607. It is true, one of the questions involved in the *Sanders case* arose in connection with the testimony that the defendant had a "hot box" to contend with, whereas in the case at bar no "hot box" is involved, but in the case at bar there was testimony raising questions as to whether or not the defendant exercised the proper care and precaution in reicing the car in question so as to be ready for shipment, and in getting the car dispatched for the said place of destination, Boston, Mass., in time for the market on June 3, 1935.

This opinion, written as a dissent, being concurred in by a majority of the Justices, becomes the opinion of the Court.

All exceptions are overruled, and the judgment of the Court below is affirmed.

Mr. Chief Justice Stabler and Messrs. Justices Baker and Fishburne concur.

Mr. Justice Bonham dissents.

Mr. Justice Bonham (dissenting):

The plaintiff-respondent is a partnership composed of J. H. Carter and W. Frank Sims, engaged in the business of buying, selling, and shipping, to points north and east, perishable vegetables.

Defendant-appellant is a railroad engaged in the transportation for hire of freights and passengers.

The plaintiff brought this action against the defendant to recover losses which it alleged it sustained by reason of the failure of defendant to transport in time to reach the market at Boston certain green beans.

The complaint alleges that plaintiff, on May 30, 1935, purchased of B. A. Garrell of Tabor City, N. C., a carload of green beans for shipment, by defendant's road to Boston via Petersburg, Va.; that defendant issued its bill of lading and waybill to B. A. Garrell at Tabor City, who issued diversion instructions on the said car, then en route to Petersburg, Va., at 1:50 p. m., June 1, 1935; that the car of beans arrived at Petersburg in ample time for diversion to Boston for the market of June 3d, but that, due to the defendant's negligence in the diversion of the car, it did not arrive in Boston until June 4, 1935; that in consequence of this delay the beans were sold at a loss to plaintiff of $437.68. (By agreement this claim was reduced to $285.93.)

For answer, defendant admits the allegations of Paragraphs 1 and 4; admits the allegations of Paragraph 3, except that which states that the issuing of diversion instructions at 1:50 p. m., June 1, 1935, was in ample time for the carload of beans to arrive at Boston on the morning of June 3, 1935; this allegation defendant denies. Admits that the carload of beans arrived at Boston on the morning of June 4, 1935, but denies that arrival at that time was due to any negligence or carelessness on the part of the defendant, and, on the contrary, alleges that it was due to the delay of plaintiff, or Garrell, in furnishing diversion instructions. Defendant further alleges that it has no information or knowledge sufficient to form a belief as to the allegations of Paragraphs 2 and 6, and therefore denies them.

The case was tried in the Civil Court of Florence, January 19, 1937, and resulted in a verdict for plaintiff in the sum of $285.93.

Motions for nonsuit, directed verdict, and new trial were made at proper times and all of them were denied.

It may be stated that it is undisputed that when the diversion instructions were given by Garrell at 1:50 p. m., June 1, 1935, the carload of beans was not en route to Petersburg, Va., as alleged in the complaint, but had been at the Collier Yard, the diversion point of the Atlantic Coast Line Railroad, since 1:55 a. m., May 31, 1935.

The issues made by the pleadings made it necessary for the plaintiff to prove by the preponderance of the evidence that the delay in the arrival at Boston, of the carload of beans, was due to the negligence of the defendant in diverting the car at Petersburg. It attempted to do this by introducing a published schedule of defendant, which was allowed over defendant's objection on the ground that that schedule was for the benefit of shipments of like character from Florida, and did not relate to traffic from North Carolina territory, and relates to entirely different trains. It was by this schedule, so objected to, that plaintiff undertook to prove that trains left Petersburg between the hours of 2:33 p. m., June 1st, when the diversion instructions for its car to Boston were received at Petersburg, and the time the car was shipped, upon which it might have been shipped in time to reach Boston for the June 3d market.

No witness for plaintiff testified of his own knowledge of the movement of trains through Petersburg on the stated day.

The appeal rests upon three exceptions, which impute (1) error for that the motion for nonsuit was denied, when the plaintiff had offered no testimony which tended to prove that defendant was negligent in any matter which was a proximate cause of damage to plaintiff, especially since defendant specifically refrained from agreeing to transport on any particular train or in time for any particular market. (2) Error in refusing defendants motion for directed verdict, for that, the only reasonable inference deducible from the evidence was that the car was transported with all reasonable speed; that plaintiff was required to show evidence of an unreasonable delay, which plaintiff failed to do. If

it should be held that there is a scintilla of evidence tending to establish plaintiff's contention in a case of this character, more than a scintilla of evidence is required to warrant sending the case to the jury. (3) Error to refuse the motion for new trial made on the ground that the evidence conclusively shows that all the cars which moved from Petersburg in any train in which this car could have moved passed Petersburg after the diversion order was given, and which reached Richmond in time to make the connection contended for, were diverted at Petersburg previous to the time of the diversion of plaintiff's car, and that no train which carried a car diverted at Petersburg as late as or later than plaintiff's car reached Richmond in time to make the connection contended for.

This action is for damages for the negligent handling of freight moving in interstate commerce. It is, therefore, governed by Federal law and the decisions of Federal Courts.

It is a rule of these Courts that the scintilla rule relating to evidence which obtains in this jurisdiction is not of force in cases relating to matters in interstate commerce. More than a scintilla of evidence is required in cases where freight moves in interstate commerce.

In the schedule which the plaintiff introduced, over the objection of the defendant, and upon which plaintiff relies, there is found these provisions:

"The schedules herein contained are not guaranteed, but indicate the service which may be expected. This Company reserves the privilege to alter or vary therefrom without notice to the public. The time of connecting carriers is published for information only."

"Note B—This schedule may, under ordinary conditions, and subject to operation of advance sections of perishable trains of P. R. R. and B. & O. R. R., from Potomac Yard, be expected at destinations indicated, on carload perishable traffic when bill through from point of origin, or diverted in time for dispatch on all sections of A. C. L. R. R. perish-

able train leaving Jacksonville or Waycross the day following the date of shipment. The 4:15 a. m., arrival at Boston, via N. Y. N. H. & H., does not insure auction market delivery on B. & M. tracks morning of arrival. Auction delivery on B. & M. tracks at Boston not guaranteed on the 4:00 a. m. or 4:45 a. m., arrival, but under favorable circumstances may be protected."

When the motion for nonsuit was made at the close of plaintiff's testimony in chief, literally the only evidence relied on to prove the allegation of the complaint that the delay of which plaintiff claims that its freight failed to reach the market at Boston in time for the market of the morning of June 3d, was this schedule and the attempt to show by it the movement of trains at Petersburg; and testimony of the plaintiff. This witness had no personal knowledge of such movements, and it was incompetent for him to say that because a schedule said that certain trains were scheduled to make certain runs, that they would surely make certain times of arrival and departure. Plaintiff also introduced a letter from Mr. W. A. Townes, a solicitor for defendant, which, so far from furnishing any evidence of actionable negligence on the part of the defendant, distinctly shows the contrary. We insert this extract from it:

"Briefly, the facts are that on the day your diversion direction was received at Petersburg, we had 209 cars on our yard for diversion. Your car had been switched out for additional icing, on account of having been held 36 hours awaiting your directions. I mention this to show that even had it been proper to give your car special and preferential treatment over other cars, it would have been difficult to do for this reason.

"The closing hour at Richmond, Va., is 5:00 p. m., for cars to reach the special expedited service for Boston, and the first train that could have, under any conditions, moved your car arrived at Acca (Richmond, Va.), at 5:22 p. m. Even had we attempted to give your car preferential treatment to get it in this train, it would have required that the

train be held over for this purpose, thereby delaying 70 cars on that train, as well as the three trains immediately following it, and would have caused the train to arrive in Richmond even a further time beyond the closing limit."

We think there was no competent evidence which authorized the submitting of the case to the jury at this stage. Practically all the plaintiff had proved, and that was admitted, was that its carload of beans had arrived at its destination too late for the market of June 3d, and in consequence of this delay the plaintiff had suffered a loss.

The appellant submits in the prelude of its brief that the cardinal question for determination here is this: "Is the mere fact that a perishable commodity moving in interstate commerce does not reach destination for a particular market, the responsibility for reaching which is indicated in the schedule, evidence of negligence sufficient to support a verdict when the contract under which the commodity is shipped contains a stipulation 'that no carrier is bound to transport said property by any particular train * * * or in time for any particular market or otherwise than with reasonable dispatch'?"

The original bill of lading for this shipment, which was signed by the shipper, shows that the shipper and all those claiming under him agree that the services to be performed thereunder shall be subject to all the conditions contained therein, including the conditions on the back thereof. Section 2 (a) on the back thereof is the following: "No carrier is bound to transport said property by any particular train * * * or in time for any particular market or otherwise than with reasonable dispatch."

In its answer, the appellant alleges that the delay in the arrival of the shipment at Boston was due to the delay of plaintiff or the party under whom it claims to furnish diversion instructions. It is understood that, until the shipper informed the carrier of the destination to which it desired the shipment sent, it remained at the relay point. It could not be moved by the carrier, although it remained in its custody

and care. This shipment, of a perishable nature, arrived at the Collier Park, near Petersburg, at 1:55 a. m., May 31. Diversion instructions were sent from Tabor City, N. C., by the shipper, at 1:50 p. m., June 1st, received at Petersburg at 2.13 p. m., and received at Collier at 2:33 of the same day. The shipper had left this car at Petersburg so long (36 hours) before giving his diversion instructions it became necessary to reice it twice which made it necessary to take it to the icing place at Collier, and this made it more difficult to handle it expeditiously when the diversion order arrived.

Under cross examination by plaintiff's counsel, Mr. Atkinson, the assistant transportation inspector for defendant, and a witness for defendant, gave this lucid explanation of the method of the railroad company in handling through shipments and diverted shipments:

"The railroad company doesn't agree or pretend to agree that they will pick up a car held in Petersburg for diversion at the time the diversion message is received and give it the same handling as a car that is already in the train for through movement from Florida.

"By that Tariff that applies to shipments from Florida on that schedule a shipment of perishables from Florida, a through movement, Florida origin to Boston, means it would have to get to Acca at 6:15 or Richmond at 5:00 P. M., in order to accomplish that third morning or the fourth morning delivery. Whatever it may be it does not mean that we pick up a car held at Petersburg, shipped from North Carolina, and put it on a Florida train and give it the same schedule as to the morning's delivery that we advertise in that schedule on a through shipment from Florida."

It appears that trains from Petersburg destined for points east, and going by Richmond, must reach Acca, the transfer point, by 6 p. m. Plaintiff's contention is that one of the defendant's schedules for perishable trains showed a train due at Petersburg at 5 p. m., and at Acca at 6 p. m., and,

because the car of beans was not included in this train, the delay complained of was caused.

In the present case, the diversion order was received at Collier Yard at 2:33 p. m., June 1st. Plaintiff's car moved in train extra 1045 the same day. The evidence shows that four trains of perishables passed Petersburg toward Acca that afternoon. Now, the evidence shows that the only trains, in one of which plaintiff claims its car could have been included, which reached Acca before 6 o'clock, were those which arrived there at 5:22 p. m., at 5:35 p. m., and at 5:45 p. m. Unless plaintiff has shown that it was negligence on the part of defendant not to have included plaintiff's car in one of these, then it has not shown any negligence on the part of the defendant at all. The testimony clearly shows that every car placed in any one of these three trains at Petersburg was diverted under instructions received at Petersburg before 2:33, the hour at which the diversion instructions for plaintiff's car were received. The evidence shows that each of these three trains was filled to capacity. To have placed plaintiff's car in any one of these three trains would have necessitated displacing a car which had preference over it. Respondent must concede that this is forbidden by the federal statutes.

"That a carrier engaged in interstate commerce becomes subject as to such commerce to the command of the statute, and may not set its provisions at naught whatever otherwise may be its power when carrying on commerce not interstate in character, cannot in reason be denied."

This is the language of Mr. Justice, later Chief Justice, White of the United States Supreme Court, interpreting the Acts of Congress, and its amendments, regulating interstate commerce and creating the Interstate Commerce Commission, in the case of *Interstate Commerce Comm. v. Ches. & Ohio Ry. Co. et al.*, 200 U. S., 361, 26 S. Ct., 272, 277, 50 L. Ed., 515.

By the third section of the Act of Congress of 1887 (49 U. S. C. A., § 3), above referred to, it is made unlawful to give any undue or unreasonable "preference or advantage" to any particular person, or to subject any particular person to "any undue or unreasonable prejudice or disadvantage whatever."

If, then, the defendant had displaced any car in any one of the three trains leaving Petersburg and arriving at Acca at or before 6 p. m., June 1st, in order to include plaintiff's car of beans, it would have done so in direct disregard of the federal statute and would have laid itself liable to the penalties provided by the statute.

The complaint charges a distinct act of negligence; namely, "the negligent and careless delay of the defendant in the diversion of the said car of beans at Petersburg, Virginia."

We do not think that the plaintiff has proven this allegation.

In the case of *Sanders v. C. & W. C. Ry. Co.,* 147 S. C., 487, 145 S. E., 400, 402, upon which plaintiff relies, the following is quoted with approval from the case of *Van Epps et al. v. A. C. L. Ry. Co.,* 105 S. C., 406, 89 S. E., 1035: "In an action for damages for negligent delay in transportation of a perishable vegetable, the plaintiff is required to show negligence arising out of an unreasonable delay, and also that such negligence was the proximate cause of the damage."

There is no proof of an "unreasonable delay" in this case; on the contrary, there is abundant proof that the shipment moved with reasonable dispatch after the receipt of the diversion order at Petersburg at 2:33 p. m., June 1st. It could not have moved on any train leaving Petersburg after that time which, even if on schedule all the way, could make a connection at Acca which would have put the car in Boston for the June 3d market.

No one testifies that any of these trains made such connection, but it is fair to say that the schedule, introduced over objection, shows that they were expected to do so.

The trial Judge, in refusing the motions for directed verdict and new trial, relied on the case of *Sanders v. C. & W. C. Ry. Co., supra.* There are points of resemblance between that case and this, but the acts of negligence relied on to show unreasonable delay are essentially different.

In that case the delay was alleged to be due to a "hot box" on one of the cars. There was evidence to take the case to the jury that the carrier in handling this "hot box" car at Potomac Yards was negligent. In the present case there is no evidence to show that the carrier could have shipped the car of beans by any trains leaving Petersburg after 2:33 p. m., June 1st, in time to make connection at Acca, without displacing other cars of like nature. This would have been in violation of the pertinent federal statute forbidding the giving of preference in shipments.

I think the judgment of the lower Court should be reversed and the case remanded, with directions to enter judgment for the defendant.

This opinion was written as the main opinion but, as the other Justices of the Court do not concur therein, it becomes the dissenting opinion.