8625

MAGILL v. SOUTHERN RAILWAY.

1. EVIDENCE—DECLARATIONS—RES GESTAE.—Statements made by one injured by a train of freight cars as soon after the injury as those near could get to him as to how he was injured are admissible as part of the *res gestae.* That declarant was dazed or shocked does not render the declarations incompetent, but only affect their weight.

2. IBID.—RULE.—Error in admitting parol evidence as to the contents of a printed rule is cured by introduction of the rule.

3. IBID.—EXPERT EVIDENCE.—One conversant with the length of freight cars may testify as to their length and the distance they extend over the ends of the crossties, and such evidence is competent on the issue of injury caused by a freight car extending over the crossties.

4. RAILROADS—INDUSTRIAL SIDETRACKS—CHILDREN—ISSUES.—Whether a railroad company was negligent in running a train of freight cars over an industrial sidetrack rapidly, where children were accustomed to be and where the company had left a pile of crossties piled near the track irregularly in violation of its rules on or near which a child was struck and injured, and whether the train came in without proper lookout, were issues under the evidence here for the jury.

5. IBID.—NUISANCE—CHILDREN.—While this Court is not prepared to hold that a pile of crossties is *per se* an attractive nuisance for children, yet the evidence as to the place in question and of the use made of it by children, warranted submitting this issue to the jury.

6. CHARGE.—In giving a request it is the duty of the Judge to make clear in his own language or that of this Court in former decisions, what the principle of law embodied in the request is.

Before SEASE, J., York, November term, 1912. Affirmed.

Action by Samuel T. Magill, by guardian, against Southern Railway and W. W. Ferris. Defendants appeal.

*Messrs. B. L. Abney* and *McDonald & McDonald,* for appellants.

*Mr. Thos. F. McDow,* contra, cites: *Duty to warn:* 93 S. C. 17. *Declarations as part of res gestae:* 68 S. C. 310; 47 S. C. 9; 68 S. C. 313; 86 S. C. 102. *Contents of collateral writing may be given:* 89 S. C. 417; 59 S. C. 467; 82 S. C. 427. *Evidence on same point cures error:* 78 S. C. 143; 70 S. C. 315; 41 S. C. 415; 36 S. C. 374.

July 25, 1913.   The opinion of the Court was delivered by

MR. JUSTICE WATTS.    This was an action in the Court of Common Pleas for York county for $20,000 damages for alleged personal injuries to the plaintiff, received while on or near the track of the defendant, Southern Railway Company.    The case was heard by Judge Sease, and a jury, at the November term of the Court, for said county, in 1912, and resulted in favor of the plaintiff for $8,000.   At the close of plaintiff's testimony a motion was made and granted by the Court to direct a verdict for the defendant as to the cause of action for punitive damages set out in the complaint.   At the close of all testimony, the defendants asked the Court to direct a verdict in their favor on two grounds: (1) That there was no evidence tending to show a breach of any duty that the defendants owed to the plaintiff, and that there was, therefore, no evidence of negligence on their part which was the proximate cause of his injuries.   (2) Upon the ground that the plaintiff was a trespasser upon one of the cars of the defendant, and that there was no evidence of a breach of any duty on the part of the defendants owed to the plaintiff.   This motion was refused.   After verdict was rendered a motion for a new trial was made and refused.   Defendants, after entry of judgment, appeal and allege error by twelve exceptions.   At the hearing in this Court appellants' counsel announced that they abandoned exceptions two and three.

Exceptions one, four, and five, allege that his Honor was in error in permitting over defendants' objection plaintiff's witnesses to testify as to certain matters.

Exception one, in permitting witness, McNinch, to testify as to statements made by plaintiff as to how he received the injuries, as such statements were not part of the *res gestae,* and the plaintiff was not at that time in a condition to make an intelligent statement, being dazed and shocked.   As to exception one in allowing McNinch,

the uncle of the plaintiff, to detail the statement, made by the plaintiff, immediately after he received the injury. We see no error in this, as we think it was admissible as part of the *res gestae.* As was said in the case, *State* v. *Arnold, 47* S. C. 9, 24 S. E. 926, the Court held admissible as *res gestae* the statement, "Charlie shot me to death," made by a man in a doorway of a house from which he staggered some thirty yards and fell, the utterances being made a few minutes after the shooting to the first person who reached him in response to his cries for help. The declarations here in question were probably made within two or three hundred feet of the place of the shooting. These circumstances of time and place do not alone necessarily prevent a declaration from being part of the *res gestae,* but, they are factors, with other circumstances, in determining whether the declarations were the spontaneous utterances of the mind under the immediate influences of the transaction." The Court in the same case further says: "Questions of this kind must be very largely left to the sound judicial discretion of the trial Judge, who is compelled to view all of the circumstances in reaching his conclusion, and this Court will not reverse his ruling, unless it clearly appears from undisputed circumstances in evidence that the testimony ought to be admitted or rejected, as the case may be." "In the nature of the case there can be no hard and fast rule as to the precise time near an occurrence within which declarations explanatory thereof must be made in order to be admissible. The general rule is that the declarations must be substantially contemporaneous with the litigated transaction and be the instinctive, spontaneous utterances of the mind while under the active influences of the transaction, the circumstances precluding the idea that the utterances are the result of reflection or designed to make false or self-serving declarations." *State* v. *McDaniel,* 68 S. C. 310-311, 47 S. E. 384.

"This Court has several times held that the declaration need not be made coincident with the injury, but near about

it, so nearly that it is not likely that the declaration could be manufactured." *Williams* v. *Southern Railway Co.,* 68 S. C. 313-314, 47 S. E. 706. See, also, *Shelton* v. *Southern Railway Co.,* 86 S. C. 102-103, 67 S. E. 899, wherein the Court says: "The testimony on the part of the plaintiff was that the second car from the engine was the first to jump the track and that the engine ran on about three-quarters of a mile before it stopped; the engineer said he stopped within one hundred and fifty or two hundred yards; and when the engineer ran his engine back to the wreck he said to the conductor: 'Cap, we have played hell.' Error was imputed to the Judge in admitting the declaration of the engineer on the ground that it was too long after the accident to be admitted as part of the *res gestae.*" The Court quotes from the case of *State* v. *McDaniel,* and says: "While the length of time between the wreck and the making of the declaration in this case was such as to raise some doubt as to its admissibility, it was not such a clear case as would warrant the holding that the testimony was not within the rule." When this evidence was admitted McNinch, the witness, testified that he had been in his office looking after some business, had changed his clothes, put on overalls and was standing in the porch of the store and was hailed, turned and saw a brakeman, of the railroad of this train, running, and the brakeman hollered: "Captain, for God's sake get a doctor here quick. We have killed a man, or cut a man's leg off." I followed in a moment after sending to Fort Mill for a doctor. In answer to the question, "You got up there as quickly as you could?" He said, "Yes, sir. I was there inside of half a minute. I couldn't have been longer, as soon as I could run there as hard as I could go." "Did he make a statement as soon as you got there?" "Yes, sir; just as soon as I got down on my knees by him. Oh, I guess it was a few seconds."

As to that part, which complains that when statement was made by plaintiff he was dazed and shocked, the evidence

was admissible, and what force, and effect, and credence the jury gave to it, was for the jury alone, but in answer to a question by his Honor, as to whether the statement made by plaintiff was sensible and coherent, or rambling, the witness' answer was: "It was as intelligent as could be. There is no question about it." This exception is overruled.

Exceptions two and three were abandoned at the hearing of the case.

Exception four alleges error in allowing plaintiff's witness, Berry Hill, to testify as to the existence of a rule of the company, forbidding employees to place obstructions near the track. This exception is overruled for the reason that later in the trial the rule was brought out in examination of one of the defendant's witnesses, E. L. Hughes, and for this reason the exception cannot be sustained. *Hyland* v. *Telephone Co.,* 70 S. C. 315, 49 S. E. 879; *Young* v. *McNeil,* 78 S. C. 143, 59 S. E. 986.

Exception five is as follows: "Because his Honor erred in permitting the plaintiff, over the objection of defendants, to prove by their witness, W. H. Howard, that freight cars, other than those that are alleged to have injured the plaintiff, projected out over the ends of the crossties; the error being that it was incompetent to prove that the size or length of other cars might have been, or how far their ends would project over the ends of crossties, as it was not shown that they were of the same width or size as the one that injured the plaintiff, as alleged in the complaint."

By reference to the testimony of Howard it will be seen that he had run as a train hand, and on switch engine, and witness had made experiments on the morning that the injuries occurred, that he was called as an expert witness, and testified sufficiently to show that he was an expert, and was entitled to give an opinion, and his testimony was not contradicted by any of the train crew, who were on the train

at the time of plaintiff's injury, and who were present at the trial of this case.    This exception is overruled.

Exceptions six and seven allege error on the part of his Honor in not directing a verdict for the defendants on the grounds stated and depends entirely upon the question whether or not there was any evidence tending to show negligence on the part of the defendants, which was the proximate cause of the plaintiff's injury. The specifications of negligence are that the defendant railway company negligently, and in violation of its own rule, placed in the pathway, commonly used by the residents of the village in going to and from the village, including making trips to the defendant's passenger station and that the defendant knew, or should have known, that this pathway was in constant use, placed in the pathway, and in close proximity to the end of the crossties, of said track, a large number of crossties, piled up irregularly, and negligently failed to require them to be removed.    That notwithstanding defendants' knowledge that children of very tender years were frequently upon said pile of crossties, and nothwithstanding defendants knew of the perilous situation of the plaintiff, or by the exercise of due care could have known it, they failed to warn the plaintiff, and took no means of precaution to save said plaintiff from the injuries suffered by him.    That defendants failed to keep watch and look out on front of moving train of cars so as to prevent injury to any person along the pathway; and particularly to prevent any injury to children of tender years, who, with knowledge and consent of defendants, were accustomed to travel along the pathway, and to be upon the crossties.    That while the plaintiff, a child of tender years, was on the pile of crossties the defendants recklessly and negligently ran said cars on the sidetrack at an excessive and dangerous rate of speed.

We do not think his Honor was in error in submitting the case to the jury for their determination as more than one inference could be drawn from the evidence in the case.

There was some evidence in the case that the pathway was commonly used, and that the crossties were put where they were in violation of the defendant company's rule, and that children were accustomed to play there, and that the employees of the company failed to keep a proper look out, and that the train came in at a high rate of speed, and that the shifting was done in too short a time, as they were in a hurry to go two miles to get on a sidetrack, and make way for the passenger train. There was some evidence of a loose door, in one of the cars, swinging. There was some evidence that the plaintiff might have been injured by the loose swinging door projecting out, as cars came around the curve at the rate of speed testified to, or by a rod projecting under the car, the car step on the end of the car, which projected out, or the car itself projecting over. It was for the jury to determine under all of the facts and circumstances of this case, as testified to, whether the defendant owed the plaintiff, any duty, or whether they were guilty of any actionable negligence. "The owner of the land over which the railroad runs has the right to use it in any way, not inconsistent with the rights of the railroad company." *Harman* v. *Railroad Co.,* 72 S. C. 228, 51 S. E. 689.

The evidence in this case shows that the railroad was a sidetrack going to an industrial plant and that the path was constantly used by the residents of the vicinity. The evidence further shows that McNinch, the uncle of the plaintiff, owned the industrial plant in question, and that Charles Magill, the father of the plaintiff, has charge of the brick mill there. That plaintiff lived with his father and he and other children, as well as the employees of the industrial plant, used the pathway in question in going to school, to the station, and village, and the path had been so used since the erection of brick mill over ten years. It was held in *Goodwin* v. *Railroad,* 82 S. C., that the rights of the owner of an industrial plant and of its employees over the ground along which the industrial plant road ran were much greater than

over the right of way of a railroad company along the main line.

"Where the public has constantly used a pathway along a railroad track, the railroad company owes the duty to be on the lookout for them and not injure them. If such persons are not trespassers but licensees in such cases it is the duty of the railroad company to expect persons near the track and keep a lookout for them." *Jones* v. *Railway*, 61 S. C. 556, 39 S. E. 758; *McKeown* v. *Railway*, 68 S. C. 483, 47 S. E. 713; *Matthew* v. *Railroad Co.*, 67 S. C. 510, 46 S. E. 336; *Sanders* v. *Railway Co.*, 93 S. C. 543, 73 S. E. 356.

"The duty of a locomotive engineer and fireman to keep a vigilant look out ahead, for the sake of passengers, as well as those who may be helpless upon the track, is urgent and the failure to keep such a lookout may be evidence of recklessness or wantonness." *Wilson* v. *Southern Ry.*, 93 S. C. 17. These exceptions are overruled.

The eighth, ninth, tenth, and eleventh exceptions impute error to the Circuit Judge in his charge to the jury. As to the eighth exception, an examination of the charge as a whole will show that his Honor did charge the request, as asked for by appellant, but he read from the case of *Franks* v. *Southern Cotton Oil Co.*, 78 S. C. 15, 58 S. E. 960, the language quoted and approved by the Court in that case in connection with this request, and while we are not prepared to say that a pile of crossties are *per se* attractive to children as a place to play, the evidence as to this particular place, and how it was used by them, was competent to go to the jury, and his Honor committed no prejudicial error, in quoting from the Franks case, *supra*, in connection with appellant's request to charge and this exception is overruled.

Exceptions nine and ten complain of error in modifying defendant's third and fourth requests. What is said in overruling the eighth exception disposes of these exceptions also, and they are overruled.

The eleventh exception is overruled, as his Honor charged that law fully and correctly, not only as to what duty the defendant owed to a trespasser, but likewise charged what it owed as a duty to a licensee. He charged the requests, and carefully explained what the law was in connection with the decisions of this Court. It is the duty of the Judge to give the law to the jury and in charging a sound proposition of law he has a right to explain fully, and make clear in his own language, or the decisions of the Court, what the law of the case really is, and what idea the request intends to convey of the law of the case.

The twelfth exception is overruled for the reasons set out in overruling exceptions six and seven, as this exception practically raises the same question as these exceptions.

Judgment affirmed.