## 12776

WHITEHEAD v. ATLANTIC COAST LINE R. R. CO., *ET AL.*

(150 S. E., 769)

340

*Messrs. R. E. Whiting,* and *D. Gordon Baker,* for appellant,

*Messrs. E. L. Willcox, A. L. Hardee,* and *Sam J. Royall,* for respondents,

December 6, 1929.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action by the plaintiff, Maude L. Whitehead, as administratrix of the estate of W. H. Whitehead, deceased, against the defendants, Atlantic Coast Line Railroad Company and B. A. Robeson, was commenced in the Court of Common Pleas for Florence County, in June, 1925, to recover damages in the sum of $100,000 on account of the death of the said W. H. Whitehead, on or about the 12th day of January, 1925, in the said County of Florence, State of South Carolina, as a result of being struck by a train of the defendant Atlantic Coast Line Railroad Company, operated by the defendant B. A. Robeson. In addition to these allegations, and a statement as to the appointment of the plaintiff as administratrix, and for whose benefit the action is brought, the complaint contains the following allegations which are pertinent to the issues raised in the appeal:

"That the collision resulting in the death of said W. H. Whitehead occurred on the main line track of the Atlantic Coast Line Railroad Company between Florence and Cowards, at a public road crossing over the said main line track, such public road being a detour road which was used of necessity at that time in connection with travel upon the main travelled highway leading from Florence, S. C., to Charleston, S. C.; that the crossing where the collision occurred was in close proximity to a saw mill plant upon which cars were often standing, and, although on account of its dangerous location and situation the said railroad crossing was of an unusually dangerous character to travelers approaching along the public road from the direction of Florence, it was negligently maintained by the defendant railroad

without a watchman, gates or other safeguard for the protection of such travelers; that the said crossing was rendered more dangerous by reason of a pass track to the south of said crossing, upon which pass track a freight train of the defendant railroad was, just prior to the said collision, negligently permitted by defendant railroad to be placed close up to and almost upon the public road crossing, with steam being kept up in the engine in readiness to pull out of the pass track; that the position of the engine and train close up to the public crossing and the noise of the engine was calculated to distract the attention of travelers approaching the crossing and thereby to make such road crossing more hazardous and dangerous; but that, notwithstanding the lack of any safeguards to the crossing, its dangerous location and situation, the great number of teams and automobiles constantly passing over the said tracks, and the added danger that the attention of travelers using the public highway would be distracted and diverted by the locomotive and train which was on the pass track close to the crossing, a passenger train operated by the defendant, Atlantic Coast Line Railroad Company, in charge of the defendant, B. A. Robeson, as engineer, approaching along the main line from the direction of Florence, was carelessly and with gross negligence run upon and over the crossing at a high, reckless and unnecessarily rapid and dangerous rate of speed, and without giving the signals prescribed by statute or other sufficient warning of the approach of said train; and that the said passenger train of the defendant railroad, being thus negligently and recklessly operated in the manner aforesaid, collided with the automobile in which the said W. H. Whitehead was traveling, completely demolishing said automobile and thereby causing fatal injuries to the said W. H. Whitehead, from which injuries he almost instantly died."

In their answer, the defendants admitted the collision which resulted in the death of W. H. Whitehead, plaintiff's intestate, and also admitted the appointment of the plaintiff

as administratrix, but denied plaintiff's allegations of negligence, and, as a further defense, alleged "that plaintiff's intestate and his companion, G. Fred Stalvey, were traveling the detour road as a matter of choice and on private business and that the plaintiff's intestate, W. H. Whitehead, met his death on account of his own failure to take ordinary precaution for his safety and on account of his willfulness, recklessness and wantonness in permitting the Ford coupe in which he was riding to be driven upon the railroad track in the day time at a point which was entirely unobstructed and immediately in front of a rapidly approaching railroad train." The defendants also alleged, as an additional defense, "that in driving on the main line along which the train was traveling, immediately in front of it and without taking the slightest precaution for their own safety, they were guilty of such gross contributory negligence as constituted the proximate cause of the injury sustained by them."

At the time defendants' answer was served, the defendants gave notice of a motion to require the complaint to be amended by making it more definite and certain in particulars set forth in the notice, and striking out certain allegations of the complaint, upon the ground that the same were irrelevant and redundant.

The case was called for trial before his Honor, Judge S. W. G. Shipp, and a jury, at the May, 1927, term of Court of Common Pleas for Florence County. Upon hearing the motion to require the complaint to be amended, the motion was refused. At the conclusion of the testimony introduced on behalf of the plaintiff, the defendants moved for a nonsuit, which motion his Honor, Judge Shipp, granted. Pursuant to notice duly served, from the order and judgment of nonsuit, the plaintiff has appealed to this Court, upon exceptions which will be reported with the case.

Counsel for the defendants based the motion for a nonsuit upon the following grounds:

"Mr. Willcox: I move for a nonsuit on the ground that the plaintiff's own testimony shows that this injury was due to the gross contributory negligence of plaintiff's intestate. I don't put in on the ground that there is no evidence of negligence, but on the ground that there is no other reasonable inference that could possibly be drawn from this testimony than that plaintiff's intestate or the party into whose charge he voluntarily placed himself was guilty of gross contributory negligence and that contributory negligence was the proximate cause of the injury."

His Honor, the Presiding Judge, made the following ruling on the motion:

"The Court: Now gentlemen, in ruling on this case, I will have to look on this case in the most favorable light for the plaintiff in the case. I will have to assume, therefore, that the signals were not given as required by the statute. Assuming that to be true, then it will follow that the Railroad Company was negligent *per se,* and if it contributed to the injury, why then it devolves on the Railroad Company in order to excuse itself, not only to show that the defendant-plaintiff was negligent, that is, guilty of want of ordinary care, but must go further and show that the defendant-plaintiff was guilty of gross negligence or willfulness or violation of the law. Assuming that the Railroad Company failed to give the signal and that it contributed to the injury, now, in order to obtain a nonsuit in this case it must appear from the testimony—it must appear that no other reasonable view can be taken of it, except that the plaintiff was guilty of what is known as gross negligence. It is the duty of every person who crosses a railroad track, where a public road crosses a railroad track —it is the duty of a person approaching a track to recognize that as a danger signal, and, therefore, the law places the duty on him who is crossing a railroad track to look and listen. Now, there is something there—something upon that track which distracts his attention so that he could not look or listen he may be excused. Now, what is there claimed that

would distract the attention of a person crossing the railroad track at right angles? It is claimed that there was a car standing on the south side of the crossing. It is alleged here that there was a train on the spur track making a loud, hissing noise. There is no proof of that; on the contrary, the proof is that the train was standing there getting ready to move, and the engineer was off of the train, and the train making no noise standing on a sidetrack which is built for the train to stand on and allow a train to pass on their regular track. The persons we are dealing with here are two well known lawyers, and the testimony is they were familiar with this place; the testimony is they were up there on business; the testimony is that they constantly passed up and down the road, that they lived at Lake City and frequently went to Florence, and were familiar with the schedule of the trains. We are not dealing with a stranger, or a person not supposed to know the law. We are dealing with two lawyers who are supposed to know the duty of a person crossing a railroad, and supposed to know the law. They are going slow; the testimony here is that they had an unobstructed view of the track on which the train was coming for a distance of five hundred yards, an unobstructed view after passing this side track or where the spur track would come at a distance of a hundred and some odd feet. Now, there is no testimony as to what they did, whether they looked or not, but it was their duty to look, and anyone who would look in the direction in which they were approaching the track could not help from seeing the approach of that train, and, therefore, I must conclude from the testimony here, and the only reasonable inference is, that the attention of these gentlemen was diverted; that they must have been talking about something in the car, and not looking in the direction of the approaching train. We have two or three cases which hold that where a person approached a railroad crossing and has the opportunity to see a train for a sufficient distance to prevent a collision, and fails to look and listen, the law calls

that gross carelessness; and it seems to me that under this testimony that is the only reasonable conclusion to be arrived at; and although the railroad may have been negligent, yet the gross carelessness of the plaintiff contributed to the injury. It is true Mr. Whitehead had no control over the car, as he was not the driver of the car; but under this statute here when a person gets in a car with someone else driving and starts to cross a railroad track the negligence of the driver is attributable to the other persons in the car as well. That being my view of the case, I don't think the plaintiffs have proven liability, and the nonsuit is granted."

By reference to the allegations contained in the complaint, to which we have called attention, it will be observed that the complaint states two causes of action—common-law cause of action and statutory cause of action.

In view of the full discussion of the law governing the duties of a railroad company at a public crossing of its railroad track, and of the duty of a person intending to cross over the same, in the recent cases of *McBride v. A. C. L. R. R. Co.,* 140 S. C., 260, 138 S. E., 803; *Brogdon v. Northwestern R. R. Co.,* 141 S. C., 238, 139 S. E., 459, and *Glenn v. Southern Ry.,* 145 S. C., 41, 142 S. E., 801, we consider it unnecessary to enter into a discussion of the law on that subject at this time. By reference to the reasons assigned by his Honor, the presiding Judge, in granting the defendants' motion for a nonsuit, which statement of his Honor we have quoted above, it will be seen that his Honor took the view that, notwithstanding the fact that under the testimony it was his duty, for the purpose of the motion, to assume that the signals were not given as required by statute, and that therefore, under the law, the railroad company was negligent *per se,* the defendants were nevertheless entitled to have the motion granted, for the reason that the death of the plaintiff's intestate was caused by his gross contributory negligence. It was upon this theory of the case that a nonsuit was granted.

It is the contention of the appellant that there was ample and sufficient proof of the allegations of the complaint to warrant and require the submission of the case to the jury, "and that the circumstances and conditions relied upon to show gross contributory negligence or willfulness were not conclusive for that purpose; but, on the contrary, that it was a reasonable and proper inference that the jury might justifiably draw from the evidence." While this Court in a few instances has held that it was proper for the lower Court to grant a nonsuit or direct a verdict on the ground upon which the order of nonsuit in the case at bar was based, it may be stated as a general rule that such questions present an issue for the jury. The trial Judge should refuse to submit such questions to the jury only in cases where there is no conflict in the testimony and the only reasonable inference to be drawn therefrom leads conclusively to the conclusion that the person injured, or the person having charge of his person (in cases growing out of the failure to give the statutory signals), "was at the time of the collision guilty of gross or willful negligence, or was acting in violation of law, and that such gross willful negligence or unlawful act contributed to the injury," as a direct and proximate cause thereof. In support of the order of nonsuit, the respondents cite the case of *Cable Piano Co. v. Southern Railway Co.,* 94 S. C., 143, 77 S. E., 868. In view of subsequent decisions of this Court, *McBride v. A. C. L. R. R. Co.; Brogdon v. Northwestern R. R. Co.,* and *Glenn v. Southern Ry., supra,* the *Piano Company case* cannot be regarded as a leading case, and this would be sufficient reason for not discussing the case at this time, but, out of consideration of the earnestness of counsel, we desire to make this further observation: Even if the opinion in the *Piano Company case* could be regarded as a guide at this time, and disregard subsequent cases, it would not follow that the motion for a nonsuit in the case at bar should have been granted. In the *Cable Piano Company case* there was no proof that the statutory

signals were not given. In fact, it seems to have been con-ceded that the signals were given as required by statute. It further appears from the facts stated in the opinion of the Court in that case that the person involved did not exercise the slightest care, and heedlessly and recklessly drove upon the railroad crossing in front of the fast approaching train, and the Court, in effect, held that all of the circumstances and conditions surrounding the collision led to that conclu-sion, and that no other reasonable inference could be drawn therefrom. The situation is quite different in the case at bar. In the case at bar more than one reasonable inference can be drawn from the testimony. Since, under our view the case will have to be remanded for a new trial, we desire to avoid expressing an opinion as to what credence should be given the testimony, but we are convinced that more than one reasonable inference may be drawn. In our opinion, while the circumstances and conditions relied upon by respondents to establish gross contributory negligence or willfulness on the part of plaintiff's intestate constituted testimony on that question, the same were not conclusively for that purpose, and therefore the question should have been submitted to the jury.

At the time the plaintiff's intestate lost his life, he was traveling with his companion, G. F. Stalvey, in a Ford coupé, owned and driven by Mr. Stalvey, en route to their home in Lake City, S. C., returning from Florence, S. C., where he had been on business. Both parties, the plaintiff's intestate and Mr. Stalvey, were attorneys. The highway between these two points, Florence and Lake City, was under repair a part of the way, and for that reason it was necessary for the men to travel over a detour road leading into the main highway about a mile north of the station of Cowards, at a crossing over defendant's railroad at said point, and, at this crossing over defendant's track, the plaintiff's intestate and his com-panion were struck and killed by a local passenger train go-ing south. The detour road, it appears, extended from New

Hope to Cowards, and had been prepared for the use of the traveling public between these two points, and at the time in question seems to have been traveled extensively by people traveling between Florence and Lake City. Respondents contend that Mr. Whitehead, plaintiff's intestate, and his companion, Mr. Stalvey, drove upon the crossing in question in front of a fast approaching train, in plain and open view, without exercising the slightest care, and that such act was the proximate cause of the injury. Respondents call attention to testimony to the effect that, before Mr. Whitehead, the intestate, and his companion reached the crossing in question, other parties riding in an automobile not far behind them tried and did attract their attention by sounding the automobile horn for the purpose of giving warning of the approaching train, and contend that, notwithstanding such warning, they heedlessly, without the exercise of the slightest care, drove their automobile upon the railroad crossing in front of the fast approaching train, in open view, and that such act constituted gross contributory negligence on the part of the intestate and was the proximate cause of his death.

Under our view, this is one inference that might be drawn from the testimony, but it is not the only inference that may be drawn. There was some testimony to the effect that the signals required under the statute to be given on approaching a crossing were not given by the defendants on approaching the crossing in question, and that no other sufficient warning of the approach of the train was given, and, for the purpose of the motion for a nonsuit and for the purpose of the appeal it must be assumed that the required signal or other sufficient warning were not given, and the Railroad Company therefore is presumed to be negligent *per se*. In this connection we may further state that such negligence, failure to give the required signal, is presumed to have contributed to the alleged injury as a proximate cause thereof; that is, a *prima facie* case was established. Such

presumption may be overcome by evidence, but, as stated above, whether or not such presumption was overcome by evidence is as a general rule a question for the jury, and the Trial Judge should refuse to submit question to the jury only in cases where there is no conflict in the testimony and the only reasonable inference to be drawn therefrom leads conclusively to the conclusion that the person injured was at the time of the collision guilty of gross or willful negligence, or was acting in violation of law, and that such gross or willful negligence or unlawful act contributed to the injury as a direct and proximate cause thereof.

In connection with the opinion in the *Piano Company case,* it is well to read the opinion in the case of *Callison v. Ry.,* 106 S. C., 123, 90 S. E., 260, 262. The opinions in these cases were written by the able and highly respected jurist, the late Mr. Justice Hydrick. Even under the *Piano Company case,* as we have pointed out, the respondents were not entitled to have their motion for a nonsuit granted, and the opinion in the *Callison case,* written four years after the opinion in the *Cable Piano Company case* was written, clearly supports the views we have expressed, as will be seen by the following statement of the rule by Mr. Justice Hydrick, in that opinion:

"The failure of a railroad company to give the signals required by statute at a public crossing is negligence *per se;* moreover, it is sufficient to warrant a reasonable inference of recklessness, willfulness, or wantonness, and therefore sufficient to carry that issue to the jury. No doubt, in some instances, it may be the result of mere inadvertence; if so, it would be negligence only; but, when the positive command or prohibition of a statute is violated or disobeyed, it is deemed sufficient to require submission to the jury of the question whether, under all the circumstances, it was the result of mere inadvertence, or of indifference to the rights of those who travel the highways, or a conscious failure to be careful for their safety. The reason upon which the rule is

based is that, when anything is commanded or prohibited by legislative authority, every one is conclusively presumed to know it and is bound to act accordingly, and, the matter having been brought to his attention in such a solemn and impressive way, his violation or disobedience cannot be entirely excused, and therefore it amounts, at the least, to negligence; and, while it may be negligence only, it is also enough to warrant a reasonable inference that it was due to indifference to the command or prohibition, or to a conscious disregard thereof, and of the rights of these intended to be safeguarded thereby. True, the facts and circumstances may repel such an inference, but it is for the jury to decide whether they do or not, unless the evidence is susceptible of but *one inference.* [Italics added.]"

See, also, the cases of *McBride v. Ry., Brogdon v. Ry.,* and *Glenn v. Ry., supra.*

In our opinion, the evidence in the case at bar is susceptible of more than one inference. In addition to the testimony to which we have herein directed attention, there was testimony which tended to show that, as the plaintiff's intestate and his companion approached the crossing in question where the collision occurred, their view was obstructed by means of box cars located on a side track and also by a mill shed, and that these obstructions prevented them from seeing the incoming train, and this view was obstructed until they were near the track; that there was no watchman at the crossing, a frequently traveled place; that the noise caused by the planing mill in operation near by and the noise from the locomotive attached to a freight train near the crossing prevented the plaintiff's intestate and his companion from hearing the rapidly approaching train, in the absence of the required signals being given; and as a result the collision occurred. While there is testimony to the effect that the whistle on the locomotive attached to the train that struck the plaintiff's intestate was sounded for two or three times some distance away and that the bell was sounding at the time the

collision occurred, the testimony tends to show that the signals were not given in the manner required under statute, nor other sufficient warning of the approach, of the train given. The signals required to be given under the law on approaching a crossing are required for the purpose of attracting the attention of the traveler, and this Court cannot hold in the case at bar that the giving of the required signals would not have prevented the death of the plaintiff's intestate; neither can this Court hold that the evidence in this case is susceptible of but one inference, namely, that the death of the plaintiff's intestate was caused by his gross contributory negligence as a proximate cause thereof. As to the contention of the respondents that the attention of the plaintiff's intestate and his companion was attracted by the blowing of the horn on the car a short distance behind them, it is sufficient to state that one inference to be drawn is that the blowing of the horn behind them very likely attracted their attention in the wrong direction and may have caused them to look in the wrong direction until it was too late to prevent the collision. It appears that they were traveling·slow while the train was going at a rapid rate. Of course, what we here state is only an inference to be drawn from the testimony, and we must not be understood as stating that no other inference may be drawn from the testimony. What inference a jury may draw we do not know, but in our opinion the question is clearly one for a jury to pass upon, and we think his Honor, the Circuit Judge, was in error in granting the motion for a nonsuit. We think the case should have been submitted to the jury under both causes of action, the statutory cause of action and the common-law cause of action, and the law charged applicable under each cause of action.

It is the judgment of this Court that the order and judgment of nonsuit directed by the Circuit Judge be reversed, and the case remanded for a new trial.

Mr. Chief Justice Watts and Messrs. Justices Blease and Stabler concur.

Mr. Justice Cothran dissents.

Mr. Justice Blease (concurring) : In my opinion, it is clear that the order of nonsuit should be reversed on the principle announced in *McBride v. A. C. L. Railroad Company,* 140 S. C., 260, 138 S. E., 803, which is controlling in the case at bar, and which was reaffirmed in the more recent cases of *Brogdon v. Northwestern Railroad Company,* 141 S. C., 238, 139 S. E., 459, and *Glenn v. Southern Railway,* 145 S. C., 41, 142 S. E., 801. I prefer to base my concurrence in the opinion of Mr. Justice Carter on the authority of those cases, without going back to the other cases mentioned by him. The opinion of Mr. Justice Stabler in the *McBride case,* adopted by this Court, cleared up the seeming confusion as to the governing actions arising out of accidents at railroad crossings, created by some prior decisions. If the Court will simply follow in the future the holdings there made, we may be assured no further confusion will arise.

Mr. Justice Stabler concurs.