13130

STABLER v. SOUTHERN RAILWAY ET AL.

(158 S. E., 267)

November, 1929.

*Messrs. Adam H. Moss, Frank G. Tompkins and P. F. Haigler,* for appellants,

*Messrs. T. P. Taylor, Jas. S. Verner, A. F. Spigner* and
*J. C. Hiott,*

April 23, 1931.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE W. H. TOWNSEND.

This is an appeal from a judgment for damages under Lord Campbell's Act, Code of Civil Procedure, §§ 367, 368 and the Railroad Crossing Act, Civil Code, §§ 4903, 4925, growing out of a collision at a grade crossing.

The exceptions raise the questions: (1) Was there evidence of a failure on the part of defendant railway company to give the statutory signals? (2) Did the intestate contribute to his death by gross carelessness and willfulness on his part? (3) Did the Circuit Judge err in refusing to charge the defendant's ninth request?

As to the first question: T. R. Arant, a witness for plaintiff, testified that train was running backwards at a rate of 25 or 30 miles an hour toward the crossing without giving the statutory signals by either sounding the bell or whistle within 530 feet of the crossing. This evidence required the submission of the first question to the jury. *McBride v. Ry.,* 140 S. C., 260, 138 S. E., 803; *Brogdon v. R. R. Co.,* 141 S. C., 238, 139 S. E., 459; *Glenn v. Ry. Co.,* 145 S. C., 41, 142 S. E., 801; *Whitehead v. A. C. L. Ry. Co.,* 153 S. C., 339, 150 S. E., 769.

As to the second question: The appellant contends that, under the authority of *Cable Piano Co. v. So. Ry. Co.,* 94 S. C., 143, 77 S. E., 868, and *Chisolm v. Ry. Co.,* 121 S. C., 394, 114 S. E., 500, the Court should

have held, as a matter of law that the intestate was guilty of such gross or willful negligence as to bar a recovery.

While the Legislature has commanded a traveler on a highway to bring his vehicle to a full and complete stop (35 Stats. at Large, 1316) before entering or crossing any express highway in the state highway system (*Townsend v. State Highway Department,* 156 S. C., 545, 153 S. E., 572), it has never seen fit to command that travelers either stop, look, or listen before entering upon or crossing a railroad track. The duty so to do is not absolute; whether a failure so to do is reckless gross negligence or willful misconduct depends upon the then surrounding circumstances and the state of the traveler's mind.

The decision in the *Cable case* has been modified by the fourth and fifth paragraphs (pages 402, 403, of 121 S. C., 114 S. E., 500, 503), of the decision in the *Chisolm case.*

As held in the *Chisolm case:* "It is ordinarily a question for the jury  *  *  *  to say whether the attempt of the traveler to cross without looking and listening effectively was excusable or culpable; that is, whether or not it amounted to negligence or willful misconduct." See, also, *Whitehead v. A. C. L. R. R. Co.,* 153 S. C., 339, 150 S. E., 769.

Testing this case by the *Chisolm case,* we find evidence that neither the bell nor whistle on the engine was sounded while the engine was between the station and the crossing, that the attention of the intestate was probably distracted by the noise of his own automobile engine and that of a passing truck, and that the situation required the deceased to look in three other directions during the brief time the train, running at 25 or 30 miles an hour, was approaching the crossing, so that it was too late for the intestate to avoid getting on the track when, his attention being aroused by the shouts of the man on the tender, he saw the train almost upon him. The intestate's failure to look in the direction of the approaching train may under the evidence have been due to inadvertence. That question was for the jury. As said in the

*Chisolm case,* 121 S. C., 394, 114 S. E., 500, 504, "The facts do not warrant the Court in pronouncing the intestate's omission such a conscious or reckless disregard of his duty to look in the circumstances surrounding him as would charge him with contributory willfulness."

For these reasons, the first seven exceptions are overruled.

The defendant's ninth request to charge was properly refused as upon the facts, under the authority of *Richardson v. N. W. R. R. Co.,* 124 S. C., 314, 117 S. E., 510; *Priester v. So. Ry. Co.,* 151 S. C., 433, 437, 149 S. E., 226.

For this reason, the eighth exception is overruled.

The judgment of this Court is that the judgment below be affirmed.

Let the defendant's ninth request to charge be included in the report of the case.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE CARTER concur.

MR. JUSTICE BONHAM concurs in result.

MR. JUSTICE COTHRAN dissents.

MR. JUSTICE STABLER disqualified.

MR. JUSTICE CARTER (concurring) : The plaintiff, Mrs. Irene Elizabeth Stabler, as administratrix of the estate of Tillman Stabler, deceased, commenced this action against the defendants, Southern Railway Company, Earle Utsey, and R. T. Hilton, in the Court of Common Pleas for Richland County, December 17, 1928, for the benefit of herself and infant daughter, widow and daughter, respectively, of the deceased, for damages suffered on account of the death of the said deceased, alleged to have been caused by the defendants in a collision with a train of the defendant Southern Railway Company, at a railroad crossing in the Town of Fort Motte, S. C., on or about the 25th of September, 1928; said Earle Utsey and R. T. Hilton being in charge of said train as conductor and engineer, respectively, at the time of the collision. After issues were joined, on motion of the de-

fendants, the case was transferred from Richland County to the Court of Common Pleas for Calhoun County, and the case came on for trial before his Honor, Judge William H. Grimball, and a jury, resulting in a mistrial. At the November, 1929, term of said Court, the case was tried before his Honor, Judge C. C. Featherstone, and a jury. At the close of the testimony in behalf of the plaintiff, motion for nonsuit was made by the defendants, which motion being refused the defendants offered testimony, and at the close of all of the testimony the defendants moved for direction of a verdict. This motion was also refused by the Court, and the case was submitted to the jury, resulting in a verdict for the plaintiff in the sum of $2,500.00 actual damages. A motion on the part of the defendants for a new trial being refused, from the entry of judgment on the verdict the defendants have appealed to this Court.

The exceptions raise only three questions, which, adopting the language of counsel for appellants, may be stated as follows:

(1) Is there any testimony in the case tending to show any negligence or gross negligence on the part of the defendants which contributed to the fatal injuries of plaintiff's intestate as a proximate cause?

(2) At the time of the collision, was there gross or willful negligence or violation of law on the part of plaintiff's intestate, contributing to his fatal injuries as a proximate cause?

(3) Did the Court commit error in refusing to charge defendant's ninth request?

The first and second questions we shall consider together.

The accident occurred in the Town of Fort Motte, S. C., at a point where the highway crosses the railroad track of the defendant Southern Railway Company, about 530 feet from the depot, on the western side in the direction of St. Matthews, S. C. The train in question which struck the plaintiff's intestate was a work train engaged in hauling

dirt, and approached from the direction of Columbia going in the direction of St. Matthews.

The train was of considerable length, consisting of twenty-one cars, the engine, the caboose, and an extra tender or water tank. The engine was facing toward Columbia, and was pushing the cars, caboose, and tender in the direction of St. Matthews; that is, the train was running backward. The conductor, the defendant, Earle Utsey, was riding in the cab; the defendant, R. T. Hilton, the engineer, was at his usual place on the engine; and the fireman, it appears, was in his accustomed place. The brakeman was riding on the front tender. The plaintiff's intestate was operating a Chevrolet truck, and the collision which resulted in his death occurred as he attempted to drive over the said railroad at this crossing. It appears from the testimony that the highway on which the plaintiff's intestate was traveling is not over 30 yards from the railroad track and runs almost parallel with the railroad track, from a point near the depot to a point near the crossing where the accident occurred, at which point the highway makes a slight curve to a point within a few feet of the intersection of the railroad track with the highway. The plaintiff's intestate drove off in the truck from a point near the depot down the highway a short time before the train approached from his rear. The train did not stop at the depot, or at any point in the town, but proceeded in the same direction the plaintiff's intestate was going, and when he (plaintiff's intestate) turned in the direction of the railroad track, and drove upon the railroad track for the purpose of crossing the same, the train struck him, causing serious injuries, resulting in his death a short time afterwards.

From the record in the case it appears that the appellants concede that the plaintiff's intestate was injured in a collision with the train of the defendant Southern Railway Company at the crossing in question, and that he died from the injuries thus received, but they contend that there was no testi-

mony adduced at the trial which shows or tends to show any negligence or gross negligence on the part of the defendants "which contributed to the fatal injuries of plaintiff's intestate as a proximate cause." We are unable to agree with appellants' contention. Under the well-recognized rule governing appeals on questions involved herein, this Court does not undertake to pass upon the force and effect of the testimony adduced at the trial, except for the purpose of determining whether or not there is any evidence in support of an issue raised by the pleadings. In the case at bar, in our opinion, there was testimony which made a question for the jury on the issues raised. In response to the allegations, the plaintiff offered testimony to the effect that the defendants failed to give the statutory signals or other warnings of the approach of the said train to the crossing in question, and to the effect that the train was running backward at a dangerous rate of speed through the town, a populous community. The testimony offered by the defendants on these issues was in sharp conflict with that on the part of the plaintiff, and, in passing upon the defendant's motion for a nonsuit and also the motion for direction of a verdict, it was incumbent upon the trial Judge to consider the testimony most favorably for the plaintiff. As to the rule applicable in the failure to give the signals, warning, and notice required by the statutory law of this State where a person is injured by a collision with the train, engine, car, or cars of a railroad company at a crossing, attention is called to the recent case of *McBride v. A. C. L.*, 140 S. C., 260, 138 S. E., 803, in which case Mr. Justice Stabler, speaking for the Court, discusses the question at length and gives a very clear statement of the rule to be applied in such cases. If, in the case at bar, the testimony on the part of the plaintiff, as to the statutory signals not being given, is to be believed, and that was a question for the jury, the presumption arises that the failure to give the signals was the proximate cause of the injuries to the plaintiff's intestate. It is true that such presumption is

only *prima facie* and may be overcome, but, whether or not such presumption is overcome, by reason of other facts appearing in the case is ordinarily a question for the jury, and, in our opinion, the testimony in the case at bar made it incumbent upon the trial Judge to submit the issues to the jury. In this connection the appellants contend that, even though it be admitted that the signals were not given as required by the statutory law, and that such noncompliance with the crossing statute was sufficient to give rise to the presumption that the negligence of the defendants was the proximate cause of the intestate's injuries, the evidence in the case overcomes such presumption; that at the time of the collision the plaintiff's intestate was guilty of gross or willful negligence or violation of law which contributed to his said injuries as a proximate cause thereof. A careful study of the testimony convinces us that this contention cannot be sustained. There was testimony introduced at the trial from which the jury could reasonably infer that the first warning the plaintiff's intestate had of the approach of·the train was from the shoutings of the brakeman on the emergency tank attached to the train with which he collided, causing his fatal injuries. There was testimony to the effect that the intestate met an automobile, driven by a Mr. Morris, just before he turned the curve of the highway leading to the crossing, and that this attracted his attention; also that the railroad track beyond the crossing, on the St. Matthews' side, is in a deep cut, and that a train approaching the crossing from that direction could not be seen by a traveler going over the crossing until upon or very near the railroad track, thus making it necessary to keep a close watch in that direction. Furthermore, it appears that, in undertaking to go over the crossing in question, on account of the surrounding conditions at the crossing it is necessary, as a matter of safety, to look and watch in several directions. There is some evidence that the whistle on the engine was sounded some distance before the train reached the depot on approaching the town, and ap-

pellants contend that this was notice to the plaintiff's intestate of the incoming train and that he therefore should have been on the lookout for it. It appears that when the whistle was sounded, if it was sounded, the plaintiff's intestate was on the truck ready to move off and the motor of the truck was running. It is very probable that the intestate did not hear the whistle of the train. But whether he heard it or had notice of the train's approach was under the testimony a question of fact for the jury. Appellants call attention to the testimony relative to statement of the intestate to the effect that the brakes to the truck would not work. It might be that the brakes did not work because the intestate was too much confused and excited to properly operate the same. Under moments of excitement and danger a person cannot be expected to act with deliberation and with the same degree of preciseness that he would be expected to manifest when no danger or excitement exists. According to the testimony of the brakeman on the train, there was evidently much excitement at the time of the collision. The owner of the truck testified that the brakes to the truck were in good condition, and whether the brakes were in bad condition and whether such bad condition caused the fatal injuries to the plaintiff's intestate were purely jury questions.

I am forced to the conclusion, after careful consideration, that there was testimony introduced at the trial which tended to establish negligence on the part of the defendants which contributed to the fatal injuries of the plaintiff's intestate as a proximate cause thereof, and that the testimony relied on by appellants as establishing gross or willful negligence or violation of law on the part of plaintiff's intestate, and as contributing to his fatal injuries as a proximate cause, simply raised questions of fact for the jury.

The third question involved in the appeal is raised by the exception which imputes error to the trial Judge in refusing to charge the following request of the defendants: "An engineer or trainman in charge of a train approaching a cross-

ing has a perfect right to assume that a traveler upon the highway in the apparent possession of his faculties approaching the crossing will heed the warnings of the train and will exercise that care which the law requires of him, and the engineer or trainman has a right to rely upon that assumption and pass on over the crossing, and if the traveler disregards the requirements of the law and fails to exercise slight care for his own safety in looking and listening for approaching trains when driving upon a crossing, he is guilty of gross negligence, and if injury results to him, as a proximate cause of such gross negligence, and without which such injury would not have resulted, then the railway company is not liable for such injury."

In my opinion his Honor, the trial Judge, properly refused to charge the request. See *Keel v. S. A. L. R. R.*, 108 S. C., 390, 95 S. E., 64; *Callison v. C. & W. C. Ry.*, 106 S. C., 123, 90 S. E., 260; *Priester v. Ry.*, 151 S. C., 433, 149 S. E., 226; *Irby v. Ry.*, 92 S. C., 490, 75 S. E., 793.

In this connection I desire to state, after a careful reading of the entire charge, it is my opinion that his Honor, the trial Judge, submitted the issues to the jury in clear and explicit language, with a full statement of the law applicable, fairly and impartially presented.

I think the exceptions should be overruled, and therefore concur in the opinion of Judge Townsend, affirming the judgment of the Court below.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE BONHAM concur.

MR. JUSTICE BONHAM (concurring) : I concur in the opinion of Hon. W. H. Townsend, Acting Associate Justice, in this case, but I am not prepared to accede to the doctrine suggested by him that the rule laid down in *Cable Piano Co. v. So. Ry. Co.*, 94 S. C., 143, 77 S. E., 868, has been modified by the opinion in the case of *Chisolm v. Ry. Co.*, 121 S. C., 394, 114 S. E., 500. I do not think the facts in the present case bring it within the rule laid down in the *Cable*

*case,* and practically reiterated in the *Chisolm case.* There was in the present case competent evidence on the question of negligence of defendants as the proximate cause of the collision; and there was competent evidence from which the jury could deduce a conclusion of the gross negligence, or the want of gross negligence of plaintiff's intestate. It was essentially a fact for the jury.

It was not error for the Circuit Judge to refuse the defendants' ninth request to charge. In the language in which it was couched, it assumed that the proper signals had been given by those in charge of the train. That was a sharply contested issue of fact.

To have charged as requested would have been error.

With these explanations, I concur in the result.

MR. JUSTICE CARTER concurs.

MR. JUSTICE COTHRAN (dissenting) : I think that the motion of the defendants for a directed verdict should have been granted. It appears that the intestate was traveling in a truck, along a street in the Town of Fort Motte; the street was parallel with the railroad track and about 30 feet from it, practically north and south; there was a street crossing from west to east, about 170 yards south of the railroad station house; between the station house and the crossing there was a culvert 150 feet from the crossing; the street in which the intestate was driving turned sharply, at right angle, toward the crossing, the turn being about 30 feet therefrom; a train attached to an engine headed north, was backing south. The evidence shows that, after Stabler passed the culvert, 150 feet from the crossing, the train had passed the station house and could have been seen by Stabler if he had looked in that direction; after he had made the turn in the road and was approaching up grade to the crossing, 30 feet away, all that he had to do, in order to see the approaching train, was to turn his face toward the north. He did not do so, did not stop before attempting the crossing, continued up the grade, and was struck and killed by the backing train.

Passing by his statement after the accident to the attending physician that he knew of the approach of the train, but could not stop on account of the defective condition of his brakes, it is manifest that, conceding the negligence of the company in failing to give the signals for the crossing, the intestate was guilty of gross negligence barring recovery, within the principles announced by this Court in the *Cable Piano case,* 94 S. C., 143, 77 S. E., 868, and in the *Chisolm case,* 121 S. C., 394, 114 S. E., 500; according to the testimony of the witnesses presented on behalf of the plaintiff, the intestate did not exercise the slightest degree of care to prevent the collision, which all of them testify he could have prevented by simply turning his head.

But assuming that some other inference was possible, reasonably, from the evidence, it seems clear that there was error in refusing the ninth request of the defendants which is directed to be reported.

The request was entirely proper, not a charge upon the facts, bore directly upon the main issue in the case, and should have been allowed.

If the engineer could see the traveler stop or slow down, it follows that the traveler could see the train. It would be only natural under these circumstances, where there was nothing to show incapacity on the part of the traveler, for the engineer to assume that he saw the train and would not attempt to cross the track.

In *Hale v. R. Co.,* 34 S. C., 292, 13 S. E., 537, 538, the Court said: "Even if he had been standing on the track, where he had no right to be, and where defendant did have a right to move its train, accustomed as he was to visit the depot and telegraph office, he must have known that the tracks were used for shifting trains daily, and the engineer in charge of the shifting-engine would naturally assume that he would get out of the way."

It might as well be said that this declaration of the Court, a matter of law, was a charge upon the facts.

In the case of *Smalley v. R. Co.,* 57 S. C., 243, 254, 35 S. E., 489, 493, which was a case of a person struck by a train upon a trestle, the Court said: "For, even if the engineer saw the deceased on the track, he being a grown man, apparently in possession of his physical and mental faculties, as he, in the absence of any testimony to the contrary, had a right to presume, he had the right to assume that he would get out of harm's way; and acting on that assumption would be no evidence of negligence.   *   *   *"

The Court quotes from Mr. Freeman and Judge Elliott in support of its declaration. The quotation from Mr. Freeman contains this expression: "If the object seen is an intelligent human being, it seems to be generally agreed that the engineer has a right to presume that he will get out of harm's way before the engine reaches him, and that it is not negligence to act upon that presumption."

The quotation from Elliott contains this: "But neither the negligence nor willfulness can ordinarily be shown in this way, where an adult or person apparently able to take care of himself is upon a railroad track, because the railroad employees have a right to assume, in the absence of anything to the contrary, that he will get off the track, or take such other precautions as may be available to avoid injury to himself." This quotation appears in 3 Elliott on R. R. (3d Ed.), § 1791.

If the Court has the right to make such a statement as this in reference to one struck while upon the track, surely it may not be considered a charge upon the facts when made in reference to one in a safe place outside of the rails.

In *Dix v. R. Co.,* 98 S. C., 492, 82 S. E., 798, it was held that the conductor of a train running backwards, in the absence of anything to indicate the contrary, was entitled to assume that the decedent, who was on the track in front of the train, was in the possession of all his senses, and would get out of the way.

In *Cable Piano Co. v. R. Co.,* 94 S. C., 143, 77 S. E., 868, 869, the Court said: "As there was nothing to indicate that the driver of the team was not in possession of his faculties, the engineer had a right to assume that he would exercise them, and not drive upon the track in front of the approaching train."

In *Bauer v. R. Co.,* 156 Ky., 183, 160 S. W., 933, 934, it was held, quoting syllabus: "In an action for injuries to a pedestrian, struck by an engine on a railroad crossing, an instruction that those in charge of the engine were under no duty to check or stop it unless plaintiff's conduct when they saw or by ordinary care could have seen him, was such as to lead an ordinarily prudent person to believe that he did not know of the approach of the engine, and intended to go or remain on the track, but that it was their duty to make an effort to stop the engine when they saw or by ordinary care could have seen that fact, was proper."

"Under ordinary circumstances, however, unless it appears that he is an infant or infirm, or that for some reason he cannot get out of the way, they may assume that he will do so." 3 Elliott on R. R. (3d Ed.), § 1445, citing *Washington & G. R. Co. v. Gladmon,* 15 Wall., 401, 21 L. Ed., 114; *Louisville & N. R. Co. v. Lewis,* 141 Ala., 466, 37 So., 587; *Louisville & N. R. Co. v. Cronbach,* 12 Ind. App., 666, 41 N. E., 15; *Pennsylvania R. Co. v. Meyers,* 136 Ind., 242, 36 N. E., 32; *Daly v. R. Co.,* 105 Mich., 193, 63 N. W., 73; *Bunyan v. R. Co.,* 127 Mo., 12, 29 S. W., 842.

In *Louisville & N. R. Co. v. Lewis,* 141 Ala., 466, 37 So., 587, 588, the Court said: "Though they knew of the presence of the plaintiff on the track, they were not bound to use efforts to stop the train until it became reasonably apparent that plaintiff would not drive clear of the cars, for until that time they had a right to assume that he was possessed of the ordinary faculties of sight, and that, in the exercise of those faculties, he would leave the track before encountering danger." Citing *Glass v. R. Co.,* 94 Ala., 581, 10 So.,

215; *Burson v. R. Co.,* 116 Ala., 198, 22 So., 457; *Erickson v. R. Co.,* 41 Minn., 500, 43 N. W., 332, 5 L. R. A., 786.

At least the judgment should be reversed, and the case remanded for a new trial.